(No. 105719.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. WALTER KLEPPER, Appellee and Cross-Appellant.

*Opinion filed March 19, 2009.—Modified upon denial of rehearing September 28, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Eric Weis, State's Attorney, of Yorkville (Michael A. Scodro, Solicitor General, and Michael M. Glick and Leah Myers Bendik, Assistant Attorneys General, of Chicago, of counsel), for the People.

Larry Wechter, of Geneva, for appellee and cross-appellant.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

This matter arises out of a conversation that defendant, Walter Klepper, had with a police officer. According to the police officer, defendant falsely told the officer that defendant's neighbor had tried to run him over with a truck. The State charged defendant with felony disorderly conduct (720 ILCS 5/26—1(a)(4) (West 2006)). After a bench trial, the circuit court of Kendall County found defendant guilty. The trial court declined to impose a felony sentence after finding a violation of the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11) and instead imposed a misdemeanor sentence. The State appealed the constitutional ruling directly to this court. Defendant filed a cross-appeal. We find in favor of the State and reverse.

### BACKGROUND

On February 17, 2006, defendant called the Kendall County "911" line to relate an incident involving Edward Boone, a neighbor. He stated that Boone had attempted to run him over with a truck on Willow Springs Lane, in the town of Plano. An officer arrived at the scene and was told by defendant that Boone had attempted to run him over and Boone had missed defendant by a distance of 1½ feet. As the officer stood with defendant in the spot of the incident, the officer observed a surveillance camera in a window of defendant's other nearby property. The officer requested defendant to show him the video, and, according to the officer, defendant reluctantly agreed. The officer testified that the video showed

defendant walking to and from the roadway. After defendant had disappeared from the video, Boone's vehicle drove past.

The officer interviewed Boone, as well as another neighbor, Deanna Berard, who stated she was watching from her kitchen window and heard defendant's call to 911 on her police scanner. Both confirmed the events as seen by the officer on the video and denied the accuracy of defendant's statements.

The State charged defendant by information with disorderly conduct (720 ILCS 5/26—1(a)(4) (West 2006)), a Class 4 felony, for falsely reporting to an officer than an offense had been committed. Defendant rejected the State's offer to plead to a misdemeanor despite his counsel's warning that a felony conviction could negatively affect his chiropractor's license. At trial, the court heard the tape of defendant's 911 call. On the recording, defendant states that he was a pedestrian placing his vehicle into his garage when Edward Boone aimed his truck at him and tried to run him down. He stated that he previously had multiple incidents with Boone. The trial court also heard the testimony of the officer, Boone, Berard, and defendant. This testimony was consistent with their previous statements. The court received from these and other witnesses' testimony of the "bad blood" between these residents of Willow Springs Lane, particularly as to Boone and defendant. Further, the ongoing feud among the neighbors was well known among the officers of Kendall County. The trial court permitted brief testimony as to certain specific incidents of the feud, but declined to allow defense counsel to explore the matter extensively on cross-examination.

The trial court found defendant guilty of disorderly conduct (720 ILCS 5/26—1(a)(4) (West 2006)) on March 6, 2007. Defendant filed a posttrial motion, which, *inter*

alia, challenged the constitutionality of subsection 26—1(a)(4). Defendant claimed that section 26—1(a)(4), which punishes a false report to a police officer as a felony, applied to the same conduct as section 26—1(a)(12), which punishes a false complaint to 911 as a misdemeanor. 720 ILCS 5/26—1(b) (West 2006). According to counsel, the elements of subsections (a)(4) and (a)(12) are virtually identical. On August 14, 2007, the court held section 26—1(a)(4) (720 ILCS 5/26—1(a)(4) (West 2006)) unconstitutional under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11) when compared with section 26—1(a)(12) (720 ILCS 5/26—1(a)(12) (West 2006)). Consequently, the court found defendant guilty of a Class A misdemeanor. 720 ILCS 5/26—1(a)(12), (b) (West 2006). The court continued the matter for a sentencing hearing. On September 13, 2007, the court sentenced defendant to a term of one year's probation.

The State filed a notice of appeal. After the clerk of this court rejected the State's notice of leave to appeal for lack of compliance with Rule 18, the circuit court entered a Rule 18 compliant order on November 30. Defendant filed a motion with this court arguing that the appeal should be dismissed because the circuit court lacked jurisdiction to enter the November 30 order. We denied this motion.

## ANALYSIS

The parties have presented us with the following issues: (1) whether this court may retain jurisdiction over this case; (2) whether the State waived its challenge to the trial court's constitutional ruling by proceeding to sentencing; (3) whether section 26—1(a)(4) (a Class 4 felony) violates the proportionate penalties clause of the Illinois Constitution of 1970; (4) whether defense counsel provided ineffective assistance of counsel in failing to

challenge the sufficiency of the information before trial; and (5) whether defendant was deprived of the right to cross-examine prosecution witnesses for potential bias against him.

## Jurisdiction

Before considering the merits of the appeal, we must initially consider defendant's renewed challenge to this court's jurisdiction. As previously stated, defendant was found guilty on March 7, 2007. The case was continued, and the trial court found subsection (a)(4) unconstitutional on August 14, 2007. At an August 31 court date, the State filed a motion to reconsider the court's August 14 order. On September 13, the trial court denied this motion and sentenced defendant to a term of one year's probation. The trial court explained that it found defendant guilty under section 26—1(a)(4)—the offense with which he was charged—but given the proportionate penalties violation, imposed a Class A misdemeanor. However, the August 14 and September 13 orders made no further findings in order to comply with Supreme Court Rule 18 (210 Ill. 2d R. 18).[1] The State filed its first Notice of Appeal from this ruling on October 11, 2007,

---

[1]Rule 18 requires that a court "shall not" find a statute unconstitutional unless the court makes a finding in a written or transcribed oral order; the order clearly identifies which portion of the statute is unconstitutional; the order states the specific grounds of unconstitutionality, including the constitutional provision upon which the finding is based, whether the statute is invalid on its face or as applied, whether the statute can be construed in a manner that could preserve its constitutionality, that the finding cannot rest on an alternate ground, and that proper notice has been served to the State. 210 Ill. 2d R. 18. Pursuant to Rule 18, this court may summarily vacate and remand a circuit court judgment declaring a statute unconstitutional if it fails to comply with Rule 18. 210 Ill. 2d R. 302(c)(2); *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 190 (2009).

and defendant filed his Notice of Cross-Appeal on October 19, 2007.

On October 24, 2007, the clerk of this court issued a letter stating that the notice of appeal would not be filed and docketed in the supreme court for want of compliance with Supreme Court Rule 303(b)(3) (210 Ill. 2d R. 303(b)(3)) or Supreme Court Rule 603 (134 Ill. 2d R. 603) and Supreme Court Rule 606(d)(8) (210 Ill. 2d R. 606(d)(8)). These rules direct that the notices of appeal from orders finding statutes unconstitutional shall conform with the directives of Supreme Court Rule 18 (210 Ill. 2d R. 18). On November 5, 2007, the State filed a motion to amend the order of September 13.

The circuit court granted this motion and filed an order on November 30, 2007, in compliance with Rule 18 (210 Ill. 2d R. 18).

On December 3, 2007, the State filed a notice of appeal which referenced the November 30, 2007, September 13, 2007, and August 13, 2007, orders. The State attached the November 30 order granting the motion to amend and declaring section 26—1(a)(4) unconstitutional in compliance with Rule 18. Defendant filed a notice of cross-appeal on December 11, 2007. Defendant's notice of cross-appeal referenced defendant's conviction on March 6, 2007, the initial finding of unconstitutionality on August 13, 2007, his sentence on September 13, 2007, and the supplemental order of statutory unconstitutionality entered on November 30, 2007.

Defendant then filed a motion to dismiss the State's appeal, arguing the circuit court lacked jurisdiction to enter its November 30, 2007, order. According to defendant, because the trial court lacked jurisdiction to enter this order, this court similarly lacked jurisdiction to review it. On January 16, 2008, this court denied defendant's motion to dismiss.

We reject defendant's renewed challenge to this court's jurisdiction. Defendant's current arguments to this court repeat the same essential argument in his earlier motion to this court, namely, that the circuit court's November 30 order was not valid. We first note that the factual basis for this assertion appears to be mistaken. In his brief and at oral argument, defendant asserted that the October 24 letter issued by the clerk of this court was premised upon the *mere* failure of the State to attach copies of the August 14 or September 13 orders to the notice of appeal. This is simply not the case. Both the August 14 and September 13 orders failed to comply with Rule 18. However, the clerk's letter of October 24 called the parties' and the circuit court's attention to the deficiency in conforming with the specific requirements of Rule 18, not any deficiency in the notice of appeal in *merely* failing to attach the pieces of paper. As to the merits of defendant's renewed challenge, we note that defendant is again challenging the validity of the November 30 order and this court's jurisdiction. On January 16, 2008, this court rejected defendant's motion challenging this court's jurisdiction premised on the invalidity of the November 30 order. Thus, our earlier decision is now the law of the case. See *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 448 (2004) (holding that a jurisdictional challenge previously addressed by this court in a supervisory order had become the law of the case on a subsequent jurisdictional challenge), citing *People v. Tenner*, 206 Ill. 2d 381, 395 (2002).

## Forfeiture

Defendant next argues that the State forfeited its right to appeal the constitutional issue when it declined the trial court's invitation to file a notice of appeal after entry of the September 13 ruling. According to defendant, the State instead requested an imposition of a misde-

meanor sentence. We disagree with this reading of the record. The record shows that the State maintained its position that the statute was constitutional and that the court should impose a felony sentence. The assistant State's Attorney agreed—perhaps mistakenly thinking that the State could not appeal an interlocutory order— that a sentence should be imposed to create a final judgment from which it could appeal. In its brief before this court, the State reiterates that it is challenging the constitutional finding, not the sentencing.[2] In fact, according to defense counsel, defendant had already completed his probation in September 2008. Therefore, because the State has forfeited its challenge to the sentence, we consider only the constitutional ruling.

### Proportionate Penalties

The information in this case charged defendant with a violation of section 26—1(a)(4) of the Code for the false statement he made to the police officer on Willow Springs Lane. The State did not charge defendant for his statement to the 911 dispatcher. The trial court initially found defendant guilty of disorderly conduct under section 26—1(a)(4). This section provides:

"(a) A person commits disorderly conduct when he knowingly:

\* \* \*

(4) Transmits or causes to be transmitted in any manner to any peace officer, public officer or public

---

[2]The State's brief does not challenge the sentence. The State specifically states, "the People appealed the trial court's declaration that 26—1(a)(4) is unconstitutional as applied \*\*\*. Sentencing—and any comments the People made about how it should proceed—is separate from whether section 26—1(a)(4) violates the Proportionate Penalties Clause, and such comments regarding sentencing should not be deemed a forfeiture of the defense of the statute's constitutionality." Therefore, we have an unusual case where the State is apparently not challenging the sentence.

employee a report to the effect that an offense will be committed, is being committed, or has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense will be committed, is being committed, or has been committed[.]'' 720 ILCS 5/26—1(a)(4) (West 2006).

Section 26—1(a)(12) provides that disorderly conduct occurs when a defendant:

"(12) Calls the number '911' for the purpose of making or transmitting a false alarm or complaint and reporting information when, at the time the call or transmission is made, the person knows there is no reasonable ground for making the call or transmission and further knows that the call or transmission could result in the emergency response of any public safety agency." 720 ILCS 5/26—1(a)(12) (West 2006).

According to section 26—1(b), a violation of section 26—1(a)(4) is a Class 4 felony and a violation of section 26—1(a)(12) is a Class A misdemeanor.

Under the proportionate penalties clause of the Illinois Constitution, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11. In analyzing a proportionate penalties challenge, our ultimate inquiry is whether the legislature has set the sentence in accord with the seriousness of the offense. *People v. Hauschild*, 226 Ill. 2d 63, 83 (2007). As the constitutionality of a statute is purely a matter of law, we review the question *de novo*. *Hauschild*, 226 Ill. 2d at 83.

To succeed on a proportionate penalties claim, a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements. *People v. Sharpe*, 216 Ill.

2d 481, 521 (2005). The latter method is commonly known as the "identical elements" test. *Hauschild*, 226 Ill. 2d at 83. The parties' arguments to this court are straightforward. The State argues that section 26—1(a)(12) contains elements that 26—1(a)(4) does not such that the two statutory provisions are not identical. The defendant argues that they are identical. We therefore set out the elements of the statutory provisions listed above to determine if their elements are identical.

The elements of subsection (a)(4) are: (1) transmission in any manner, (2) to a peace officer, public officer, or public employee, (3) report of an offense, (4) without reasonable ground. The elements of subsection (a)(12) are: (1) a phone call to 911, (2) report of a false alarm or a complaint, (3) no reasonable ground, and (4) knowledge that it could result in an emergency response. At the very least, subsection (a)(12) has an extra element in that it requires the State to prove the element of knowledge that the transmission could result in an emergency response. Moreover, a violation of subsection (a)(4) requires no proof that a person called "911."

The lack of identity between the statutory provisions is apparent when applied to the facts of this case. Defendant made statements which implicated the disorderly conduct statute during his call to "911" and during his conversation with Officer Hanks. While the State may have chosen to prosecute both statements, the State only charged defendant with his statement as he stood on the street speaking with Officer Hanks. Defendant was not charged with his statement on the telephone with the 911 operator. As such, the charging instrument made no reference to a 911 call or an emergency response. Further, it was not necessary for the State to prove that defendant had called 911 or that defendant expected an emergency response.

Therefore, we agree with the State that the "identical elements" test does not demonstrate the statute is unconstitutional. We reverse the trial court on this issue. Because subsections (a)(4) and (a)(12) do not share identical elements, their differing sentencing classifications for a Class 4 felony and a Class A misdemeanor (720 ILCS 5/26—1(b) (West 2006)) do not offend the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11). We turn to the other issues raised by defendant in challenging his conviction.

Ineffective Assistance/Sufficiency of Information

Defendant contends that trial counsel was deficient in failing to file a pretrial motion to challenge the sufficiency of the information. Defendant claims that the charging document failed to specify which of the three or four separate statements made by defendant contained specific comments made to police or 911 that were false. According to defendant, this has resulted in prejudice to defendant because he cannot utilize his conviction as a double jeopardy bar.

To demonstrate the ineffectiveness of counsel, the accused must satisfy the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984). First, the defendant must show that counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under the prevailing professional norms. Second, counsel's deficient performance must have prejudiced the defendant so as to deny him a fair trial. To satisfy the second prong of the test, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Here, the question is whether trial counsel's failure to file a pretrial motion to dismiss the information fell below an objective standard

of reasonableness, and whether it is reasonably probable that, but for this failure, defendant would not have been convicted.

Under section 111—3(a) of the Code (725 ILCS 5/111—3(a) (West 2006)), a charging instrument must include: (1) the name of the offense, (2) the statutory provision (3) the nature and elements of the charged offense, (4) the date and county, and (5) the name of the accused. When evaluating the sufficiency of a charging instrument, the question is not whether additional particularity could have been added but instead whether there was sufficient particularity to allow the accused to prepare a defense. *People v. Meyers*, 158 Ill. 2d 46, 54 (1994). The State must plead specific, articulable facts when charging disorderly conduct. *People v. Swanson*, 308 Ill. App. 3d 708, 712 (1999).

The information in this case stated:

"On or about the 17th day of February, 2006, WALTER IRVIN KLEPPER committed the offense of DISORDERLY CONDUCT, in violation of Chapter 720, Section 5/26—1(a)(4), of the Illinois Compiled Statutes, as amended, a Class 4 Felony in that said Defendant knowingly transmitted to Kevin Hanks, a Police Officer for Kendall County, Illinois, a report that Edward Boone had committed the offense of Reckless Driving and that Edward Boone attempted to hit the Defendant with his vehicle, knowing at the time of such transmission, that there was no reasonable ground for believing that such offense had been committed."

We find the information here contained sufficient particularity to allow defendant to prepare a defense. It stated that Walter Klepper told a public officer that Edward Boone had committed the offense of reckless driving and that Boone attempted to hit Klepper with his vehicle. This specifically alleged the substance of the statement to enable the defendant to prepare a defense. *People v. Meyers*, 158 Ill. 2d at 54. This information

complied with the requirements of section 111—3(a). Counsel was not ineffective for failing to challenge it. *People v. Phillips*, 215 Ill. 2d 554, 565 (2005) (because charging instrument was not defective, trial counsel was not ineffective for failing to challenge it). Because of this finding, we need not consider the second prong of the *Strickland* analysis. We therefore reject defendant's ineffective assistance of counsel claim.

### Cross-Examination

Defendant next claims that he was deprived of his constitutional right to cross-examine witnesses about bias. Before we address those specific claims, we review the trial testimony in more detail.

Three witnesses testified for the State. Officer Hanks testified that he responded to the dispatch which took defendant's 911 call. At the scene, defendant told Hanks that Edward Boone tried to run him over with his truck. Defendant was standing near his garage, approximately 1¹/₂ feet from the roadway. Hanks watched the surveillance video from cameras on defendant's property. The video showed a vehicle proceeding from the direction of Boone's house that did not leave the roadway or attempt to approach defendant. There were no indications from the gravel or grass next to the roadway that a vehicle had swerved off the road. Upon cross-examination by defense counsel, Hanks testified that he was aware of a history of "bad blood" between defendant and Boone which led to involvement by the sheriff's office.

Edward Boone also testified. He stated that he never left the roadway. When passing defendant's house, defendant stood 70 to 80 feet from the roadway and waved. On cross-examination, Boone acknowledged a "very long-running feud." The trial court sustained the State's objection to defense counsel's attempts to ask questions about specific incidents of feuding.

Deanna Berard lived across the street from defendant. She testified that she had a police scanner because she was a member of the Yorkville Citizen's Police Association. According to Berard's testimony, she heard a vehicle skidding on ice, so she looked out her kitchen window. She soon saw Boone drive past in a normal fashion while defendant was far from the roadway. She was listening to her police scanner, when she heard a dispatch to defendant's house. She picked up the phone herself to call 911 but her husband told her to stay out of the situation. However, she called Boone and told him that after he talked to the police, he should send them to her so she could make a statement about her observations. She was cross-examined about whether a tree in her yard obstructed her view. After Berard testified, the State rested.

Defense counsel called two witnesses: defendant's civil attorney and defendant. Attorney Robert Sandner stated that on that day in question, defendant, his client in a civil case, called asking for legal advice. Sandner told him to call the sheriff. Sandner also testified that there was a civil lawsuit between defendant and Boone. Defendant testified that after he parked his vehicle in his freestanding garage, Boone's truck passed him "getting too close to [him] and crowding [him.]" Defendant was standing 1 to 1¹/₂ feet from the edge of the roadway; Boone's truck came within inches of the edge of the pavement.

In support of the court's finding of guilt the court cited the "911" tape, and characterized defendant's voice as having a "sing-song" nature to it. The court observed that there was no need to assess witness credibility because while defendant's complaint claimed Boone tried to run him over with his truck, defendant's testimony was that Boone never left the roadway and defendant was not in the roadway, so defendant's allegations "ma[de] absolutely no sense." The court characterized

witness Berard as "independent" and explained that her testimony contradicted defendant's statements.

At the posttrial hearing, defendant and his wife both testified concerning several incidents occurring between themselves and Boone and Berard. They blamed Boone for several incidents on their property, and accused him of religious bigotry. In rejecting the claim about improper limitations on cross-examination, the trial court noted that it was aware that defendant and Boone were enemies with a "long-running feud." The court found such information unavailing to defendant because defendant's testimony only described that Boone's car came close to him but not that Boone tried to hit him, so there was no prejudice. Defense counsel then noted that the court had described Berard as an independent witness, but that her bias was shown. The court reaffirmed that bias by Berard, like bias by Boone, would not change the outcome given the testimony of defendant and Hanks.

Based on this testimony, defendant asserts to this court that the trial court erred in prohibiting additional cross-examination of Boone concerning possible bias against defendant. Defendant also contends that trial counsel was ineffective for failing to provide an offer of proof regarding Boone's anticipated testimony about bias, and failing to cross-examine Berard concerning her potential bias. Defendant's claims fail.

Defendant asserts in his brief that the proof of his guilt rested mainly on eyewitness testimony which was directly contradicted by his version of events. The record belies this assertion. Rather, it shows the trial judge based his ruling on his characterization of defendant's voice on the 911 call as "sing song," Hank's testimony regarding the contents of defendant's surveillance video, and defendant's testimony that Boone never exited the roadway. Further, the court noted that defendant's own

testimony was nonsensical because he testified that Boone never left the road and that defendant was not on the road.

The confrontation clause of the sixth amendment of the United States Constitution (U.S. Const., amend. VI) guarantees a defendant the right to cross-examine a witness against him for the purpose of showing the witness' bias, interest or motive to testify falsely. *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); *People v. Kirchner*, 194 Ill. 2d 502, 536 (2000); *People v. Harris*, 123 Ill. 2d 113, 144 (1988). The exposure of a witness' motivation is an important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 3 L. Ed. 2d 1377, 79 S. Ct. 1400 (1959); *Harris*, 123 Ill. 2d at 144. However, a trial judge may impose limits on a defense counsel's inquiry into the potential bias of a prosecution witness without offending defendant's sixth amendment right. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 89 L. Ed. 2d 674, 683, 106 S. Ct. 1431, 1435 (1986); *Harris*, 123 Ill. 2d at 144. A trial judge retains wide latitude to impose reasonable limits based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or of little relevance. *Delaware v. Van Arsdall*, 475 U.S. at 679, 89 L. Ed. 2d at 683, 106 S. Ct. at 1435; *Harris*, 123 Ill. 2d at 144. As the United States Supreme Court observed in *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985), " 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis in original.) *Harris*, 123 Ill. 2d at 144, quoting *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294.

On review, we are not required to isolate the particular limitation on cross-examination to determine whether

reversible error has occurred. *Harris*, 123 Ill. 2d at 145. Rather, " 'the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony.' " *Harris*, 123 Ill. 2d at 145, quoting *United States v. Rogers*, 475 F.2d 821, 827 (7th Cir. 1973). We look to the record in its entirety and the alternative means open to the defendant to impeach the witness. *Harris*, 123 Ill. 2d at 145. Thus, if a review of the entire record reveals that the fact-finder has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because the defendant has been prohibited on cross-examination from pursuing other areas of inquiry. *Harris*, 123 Ill. 2d at 145.

Our review of the entire record reveals that the fact-finder was aware of relevant areas of bias concerning Boone and Berard. Boone's potential bias was explored during cross-examination. He testified that he and defendant had a "long-running feud" and the two were opposing parties in a lawsuit. Additionally, Officer Hanks testified that there was "a history" of "incidents" between the two. The sheriff's department responded to that scene "a number of times" due to "bad blood" between them and due to "numerous complaints." Hanks testified that their lot line fence had been burned; accusations had been made about one putting garbage, beer bottles, and clutter over the other's lot line; and there had been trespass allegations. Also, during the probable cause hearing, Hanks testified that there is "neighborhood trouble" between Boone and defendant, including "numerous police reports or incidents" connected to a property line dispute. During closing argument, defense counsel highlighted the "Hatfield and McCoy" situation, an "ongoing, long-standing feud" that was so "palpable"

that the whole sheriff's department was aware of it due to numerous dispatches.

Although cross-examination was limited concerning specific incidents, the animosity between the parties is well noted in the record. Under these circumstances, the trial court acted within its wide latitude in limiting cross-examination.

We find defendant's citation of *People v. Averhart*, 311 Ill. App. 3d 492 (1999), does not advance his argument. In *Averhart*, defendant's theory of defense was that a police officer, Officer Smith, framed Averhart by planting drugs on him. *Averhart*, 311 Ill. App. 3d at 496. Averhart had filed a complaint with the Office of Professional Standards of the Chicago police department against Smith over a prior arrest that alleged false arrest and physical and verbal abuse. *Averhart*, 311 Ill. App. 3d at 498. During cross-examination, defense counsel was allowed to note only that the Office of Professional Standards complaint involved "serious charges" without describing what had happened beyond that it was an "encounter." The trial was essentially a credibility contest between the two. The court found that there was improper restriction on cross-examination because these facts provided the foundation for Averhart's defense. As such, the limitation of cross-examination "created a substantial danger of prejudice by denying defendant his right to test the truth of Smith's testimony." *Averhart*, 311 Ill. App. 3d at 499, citing *Harris*, 123 Ill. 2d at 145. Here, the trial court's imposed limits on Boone's cross-examination only foreclosed questioning about additional, specific examples of an ongoing feud of which the finder of fact was well aware. And, as noted above, the trial court's findings were not merely the result of a credibility contest. The trial court's finding of guilt was not based on lack of details of the feud between defendant and Boone or an underestimation of Boone's potential bias.

Defendant next claims that trial counsel was ineffective for failing to make an offer of proof about the details of Boone's potential bias that he wished to explore during cross-examination. To show that he was prejudiced by this failure, defendant must demonstrate that this bias evidence should have been admitted and that there is a reasonable probability that the result of the trial would have been different if it had. In other words, unless evidence of bias were improperly excluded, the offer of proof issue is beside the point. As explained earlier, the trial court acted within its discretion to limit cross-examination as it did, so this alone precludes defendant's offer-of-proof claim.

In any event, defendant cannot show prejudice. Even if the offer of proof had been made, and even if that caused the trial court to permit additional cross-examination, defendant still would have been convicted. The absence of prejudice also defeats defendant's claim that trial counsel was ineffective for not cross-examining Berard about potential bias. Again, the guilty verdict was based on evidence that would not have been affected by additional cross-examination of Berard—defendant's own testimony corroborated by Hanks, Hanks' testimony concerning the video, and the trial court's characterization of defendant's voice on the 911 call.

## CONCLUSION

We reverse the November 30, 2007, order declaring section 26—1(a)(4) unconstitutional because we find that subsections (a)(4) and (a)(12) do not share identical elements. Because they do not share identical elements, their differing sentencing classifications for a Class 4 felony and a Class A misdemeanor (720 ILCS 5/26—1(b) (West 2006)) do not offend the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11). Therefore, defendant is guilty of a violation of

subsection (a)(4) and eligible for any sentence within the appropriate range for a Class 4 felon.

We also have found that the State has not contested the punishment of one year's probation. We note that the sentencing ranges of both a Class 4 felony and a Class A misdemeanor contain the punishment of one-year probation. 730 ILCS 5/5—6—2(b)(2), (b)(3) (West 2006). Therefore, the punishment of one year's probation will stand based upon a conviction of disorderly conduct as defined by subsection (a)(4).

*Reversed.*