2020 IL App (2d) 180395-U
No. 2-18-0395
Order filed February 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-DV-50 |
| | ) | |
| JOSEPH LA SPISA, | ) ) | Honorable Jeffrey S. MacKay |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not improperly limit the complaining witness's cross-examination nor a defense witness's direct examination. In addition, the evidence was sufficient to convict defendant beyond a reasonable doubt. Therefore, we affirmed.

¶ 2    Following a bench trial, defendant, Joseph La Spisa, was convicted of one count of domestic battery for making physical contact of an insulting or provoking nature (720 ILCS 5/12-3.2(a)(2) (West 2016)), one count of domestic battery for causing bodily harm (720 ILCS 5/12-

3.2(a)(1) (West 2016)), and one count of interfering with the reporting of domestic violence (720 ILCS 5/12-3.5(a) (West 2016)). Defendant appeals from his convictions, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State filed a complaint against defendant on January 13, 2017, alleging two counts of domestic battery. The allegations related to defendant's actions against Janet Bogaert. At the time of the alleged battery, defendant and Bogaert were in a romantic relationship and had been living together for approximately four years.

¶ 5     Counts I and II of the complaint alleged, respectively, domestic battery under sections 12-3.2(a)(2) and 12-3.2(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.2(a)(2), (a)(1) (West 2016)), in that defendant struck Bogaert on the face. The State later added a third count for interference with the reporting of domestic violence in violation of section 12-3.5(a) of the Criminal Code (720 ILCS 5/12-3.5(a) (West 2016)).

¶ 6     The case proceeded to a bench trial.

¶ 7                                    A. Bench Trial

¶ 8     The State called Bogaert, who testified as follows. In January 2017, she and defendant were living together, and they had been in a dating relationship for about four years. On January 7, defendant drove to an office Christmas party in Bogaert's car. Although she had wanted to attend the party with him, defendant had told her that he did not want her to come. She had placed a recording device in the backseat of the car before defendant left for the party. Defendant returned home around 3:30 a.m. on January 8 and went to sleep in the bed that he and Bogaert shared.

¶ 9     During the morning of January 8, she listened to the audio recording from the night before. On the recording, she heard defendant having sex with another woman.

¶ 10    During the afternoon of January 8, Bogaert spoke with defendant about the recording and being with another woman. He was lying in bed, and she sat on the bed on defendant's left side. She had crutches with her because she had recently had surgery on her right foot, which was in a cast. Their conversation was "tense," and she was "sad."

¶ 11    Bogaert cried and asked him why he had had sex with another woman. Defendant answered because he could and because they were not married, and he demanded to know how she knew about the other woman. When Bogaert told him about the recording device, he hit her. He "reared his right hand back first" and smacked her across the left ear before quickly hitting her with his left hand in the right eye.

¶ 12    Bogaert felt horrible. She was in physical pain and was frightened. She stood up, and he grabbed her by her arm. He intertwined his fingers with hers and twisted them backwards. Her fingers still had pain at the time of trial. She then hobbled downstairs to attempt to call 911 on the house phone because defendant had her cell phone. Before she could make the call, defendant came up behind her and pulled her by her hair. He kicked her in her cast and told her she was not going to call anyone.

¶ 13    Bogaert went to the floor, and she was sobbing and in pain. She demanded that he give her cellphone back to her. Defendant eventually returned her cell phone, but she "knew better" than to contact the police. She feared for her life. She waited to contact the police until the next morning when defendant had left for Wisconsin.

¶ 14    Bogaert noticed several bruises, and her foot was in pain. She had a black right eye, redness on her cheek, and bruising and swelling of her wrists. Several photographs of her injuries were admitted into evidence.

¶ 15    Bogaert admitted that she gained access to defendant's safe at some point between January 6, 2017, and when she left his residence on January 9, 2017, she took "some cash" out of it. She believed she took less than $10,000.

¶ 16    Leo Elizalde testified next as follows. He was a police officer with the Elmhurst police department, and he was on duty on January 9, 2017. That day, he responded to Bogaert's call reporting a domestic battery. Upon arriving at Bogaert's address, Elizalde observed that she had bruising by her eye and that she looked exhausted. Bogaert also showed him an injury to her wrist. Elizalde spoke with both Bogaert and her daughter, who was also present at the home, and an evidence technician took some photographs of Bogaert's injuries.

¶ 17    Elizalde called defendant and left him a voicemail. Defendant responded the next day, and he came to the police department with his attorney on January 12. Elizalde asked defendant about Bogaert's injuries, and he responded that he was not sure how she got her injuries. Elizalde did not observe any injuries to defendant.

¶ 18    Next, defendant testified as follows. He was an oral and maxillofacial surgeon and had been practicing for 27 years. He worked out of offices in both Palatine and Wisconsin, working in Wisconsin Mondays through Thursdays. He and Bogaert began dating in January 2013, and over their four-year relationship, he financially supported her. Bogaert worked outside of the home for around one year of their relationship.

¶ 19    Defendant owned a safe that he kept in his home, and he stored around $100,000 in cash in the safe. He did not believe that Bogaert knew the safe combination, and he never gave her his password for his telephone. When he checked the safe on or after January 12, 2017, he found over $60,000 missing. He had not authorized Bogaert to take any money from the safe.

¶ 20    In the months leading up to January 2017, he and Bogaert's relationship was "stressed." They were not getting along, and he felt he was being used. They had several discussions about her moving out.

¶ 21    On January 7, 2017, defendant drove to an office party in Milwaukee, Wisconsin, and he did not want Bogaert to go to with him to the party. Later that night, he had sex with a woman in the car. He was unaware that there was a recording device in the car.

¶ 22    Defendant returned home around 4:30 a.m. on January 8, and Bogaert was awake. They went to sleep, and he got up the next day around 2:30 p.m. When he awoke, he got up to go to the bathroom and saw Bogaert going through his suit in the closet. He asked her what she was doing, and then he went back to bed. She came out of the closet and "started flailing" at him. She was standing while she hit him with both of her hands. He then grabbed her wrists and told her to stop. After he grabbed her wrists, she was upset and walked out of the bedroom. He was not upset that she caught him sleeping with another woman, and he was not bothered that she confronted him about it. He remained upstairs in bed while she went downstairs. He fell back asleep and remained upstairs until around 8:30 p.m. when he went downstairs to the kitchen to get something to eat.

¶ 23    That night, Bogaert came back upstairs around 11 p.m. Before she came to bed, he said he wanted to know how she found out about "this information" and whether she had been tracking where he went. She said she had an IT guy and that she had "jail broke" his phone.

¶ 24    Defendant denied hitting Bogaert in any way. He also denied pulling her by her hair or kicking her in her foot.

¶ 25    The final witness was Nicole Gregorio, who testified as follows. She had known Bogaert for 19 years. Bogaert told her during a January 6, 2017, conversation that she had the combination to defendant's safe. She got the combination from an email sent to defendant after he had

misplaced the combination. On January 9, Bogaert told her that she had taken $60,000 from the safe, that she was having her daughter come to get the money, and that the police were coming to defendant's residence.

### B. Trial Court Findings

¶ 26    On November 17, 2017, the trial court found defendant guilty of all three counts. The court considered the testimony of the witnesses, their demeanor, and the exhibits, which included photographs of Bogaert's injuries. The court began by noting that Bogaert and the defendant had been in a dating relationship and lived together from 2013 to January 2017. The court did not think there was any dispute that Bogaert was injured or that she had some type of injury to her face, and the court referenced the photographs of Bogaert. Bogaert had bruising under her eye and redness to her right cheek. The court disagreed that her injuries were self-inflicted or that they were inflicted immediately before the police arrived at defendant's residence.

¶ 27    The court found Bogaert's testimony credible. The court believed it was reasonable for someone who "has been threatened, beat two times, have their hair pulled, have a phone wrestled from their hand and taken away and threated to be killed" to wait until a time when their assailant was gone to call the police. As for Bogaert taking defendant's money and property, the court found that undisputed: Bogaert admitted to taking at least some of defendant's money. However, the court explained that "because someone takes money, *** that does not mean that bruising under somebody's eye fades, that bruising under somebody's eyes disappears, that [Bogaert] was not injured or this never happened."

¶ 28    On the other hand, the court did not find defendant's testimony credible. The court described defendant's demeanor on the stand as "nervous," and although the court acknowledged that testifying can be nerve-racking, it found defendant's demeanor went beyond having nerves

about testifying. The court noted that at one point, defendant lashed out at one of the State's attorneys, and the court had to remind him to calm down. The court did not think this was the demeanor of a credible witness. In addition, the court did not believe defendant's testimony that Bogaert lacked injuries at the time he left for the office on January 9. Bogaert testified to her injuries, photographs supported her testimony, and Officer Elizalde, "who has no ax to grind in this case at all," testified that Bogaert had injuries on January 9. The court did not believe her wounds were self-inflicted but instead found her injuries consistent with being punched, slapped, or hit in the face. The court believed her injuries occurred on January 8 and were caused by defendant.

¶ 29    The court sentenced defendant to 24 months' court supervision for interfering with the reporting of domestic violence and 24 months' conditional discharge for domestic battery.

¶ 30    Defendant timely appealed.

¶ 31                                II. ANALYSIS

¶ 32    Defendant presents three arguments on appeal. We address each in turn.

¶ 33                        A. Cross-Examination of Bogaert

¶ 34    Defendant first argues the court erred in limiting his cross-examination of Bogaert's biases and ulterior motives. In particular, he argues the court erred in limiting cross-examination of how Bogaert obtained the combination to defendant's safe and whether Bogaert was the initial aggressor. Defendant argues that questioning Bogaert about how she acquired the safe combination went to her credibility and that examining whether Bogaert was the aggressor would have demonstrated her bias and inclination to lie.

¶ 35    The State responds that the trial court gave defendant wide latitude to cross-examine Bogaert. In particular, the State argues defendant cross-examined Bogaert on the nature of her

intimate relationship with defendant; the nature of her financial and professional relationship with defendant; her recording of defendant; and the actions she took before and after defendant struck her. The State continues that, in her cross-examination, Bogaert admitted that she took money from defendant's safe, that defendant never gave her the safe combination, and that her feelings were hurt when she found out defendant had slept with another woman. Finally, the State argues that defendant testified that Bogaert initially attacked him and that she lacked any visible injuries, but the trial court found his testimony incredible.

¶ 36     A criminal defendant has a fundamental constitutional right to confront the witnesses against him, and the right to confront witnesses includes a right to conduct reasonable cross-examination. U.S. Const., amend VI; *People v. Davis*, 185 Ill. 2d 317, 337 (1998). An important function of cross-examination is the exposure of a witness's motivation. *People v. Klepper*, 234 Ill. 2d 337, 355 (2009). Nevertheless, a trial judge may limit defense counsel's cross-examination without offending the defendant's sixth amendment right. *Id.* A trial judge has wide latitude to impose reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive. *Id.* Nonrelevant evidence that would only confuse or mislead the factfinder is also properly excluded. *People v. Prevo*, 302 Ill. App. 3d 1038, 1048 (1999). The scope of cross-examination is within the discretion of the trial court, and we will not reverse the court absent an abuse of discretion that resulted in prejudice to the defendant. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 533 (2000); *People v. Boand*, 362 Ill. App. 3d 106, 131-32 (2005). An abuse of discretion occurs only when a trial court's decision is arbitrary, fanciful, or unreasonable. *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 39.

¶ 37    We note, however, that the trial court's discretion to restrict the scope of cross-examination arises only after there is sufficient cross-examination to satisfy the constitutional guarantee to confront witnesses. *People v. Collins*, 227 Ill. App. 3d 670, 675 (1992). To determine whether defendant's cross-examination was constitutionally sufficient, we look "not to what the defendant had been prohibited from doing but what he was allowed to do." *People v. Weatherspoon*, 265 Ill. App. 3d 386, 393 (1994). If the record shows that the factfinder was aware of adequate factors concerning relevant areas of impeachment of the witness, no constitutional question arises. *Id.*

¶ 38    Here, defendant was afforded a constitutionally sufficient opportunity to cross-examine Bogaert. Defense counsel questioned Bogaert on myriad issues, such as: her financial dependence on defendant; the state of her romantic relationship with defendant in the months leading up to January 2017; the recorder she placed in the car that defendant drove to the Christmas party; the conversation she had with defendant on the afternoon of January 8; how defendant struck her; and what she did after defendant struck her. Defense counsel questioned Bogaert about the photographs of her injuries, and counsel repeatedly asked her whether she was angry with defendant.

¶ 39    Defense counsel also questioned Bogaert about her conversations with Gregorio. Bogaert admitted she discussed her and defendant's relationship with Gregorio sometime in the month before January 8, 2017. She denied telling Gregorio she wanted defendant to hit her so she could have something on him or that she wanted to ruin his reputation. She denied telling Gregorio she was going to make up stories about defendant. Regarding a January 9, 2017, conversation with Gregorio, Bogaert answered it was possible she told her she was leaving defendant that day. Bogaert denied telling Gregorio she had taken $60,000 from defendant's safe. Bogaert also denied telling Gregorio that she called her daughter to pick up money that she had taken from defendant's safe. Over the State's objection, the court allowed Bogaert to answer whether she told Gregorio

on January 9 that she was taking a painting and some other items from defendant's house. Bogaert answered the painting was hers because it was a gift, but she did not recall discussing the painting with Gregorio.

¶ 40　In addition, defense counsel cross-examined Bogaert about defendant's safe. While the court initially sustained an objection to defense counsel's questioning about how Bogaert obtained the combination to defendant's safe based on foundation, defense counsel continued to ask Bogaert other questions about the safe, and the court allowed Bogaert to answer over the State's objection. She did not recall whether she had the safe combination on January 6, and she did not recall when she accessed the safe. She admitted, however, that she took "some cash out of the safe" between January 6 and 9, and that the money she took was defendant's money. She did not recall exactly how much she took, but she believed it was less than $10,000.

¶ 41　As we have detailed, defense counsel's cross-examination of Bogaert was robust and wide-ranging, and therefore the trial court afforded defense counsel a constitutionally sufficient opportunity to test Bogaert's potential motivations or biases. Accordingly, the trial court had discretion to limit Bogaert's cross-examination. See *Klepper*, 234 Ill. 2d at 355.

¶ 42　We hold that the court did not abuse its discretion in limiting Bogaert's cross-examination. Defendant's first alleged error regarded how Bogaert obtained the combination to defendant's safe. Defendant argues the court improperly ended this line of cross-examination due to a lack of foundation. While it is true the court initially sustained the State's objection based on foundation— specifically, it found a lack of foundation for Bogaert's conversation with Gregorio about the safe—it ultimately let defense counsel question Bogaert about her access to the safe. See *supra* ¶ 40. The record further shows that Bogaert suspected defendant's infidelity and that her feelings were hurt by defendant's relations with another woman. We therefore believe counsel had ample

opportunity to explore Bogaert's potential bias against defendant or her tendency to fabricate, and the court did not err in limiting additional questioning of how exactly Bogaert obtained the safe combination.

¶ 43    Moreover, the relevance of how Bogaert obtained the safe combination was low. The issue in this case was whether defendant battered Bogaert. As the trial court rightly stated, "[b]ut because someone takes money, *** that does not mean that bruising under somebody's eye fades, that bruising under somebody's eye disappears, that [Bogaert] was not injured or this never happened." We reiterate that the trial court had wide latitude to limit cross-examination based on concerns of prejudice, confusion of the issues, or the introduction of nonrelevant issues. *Klepper*, 234 Ill. 2d at 355; *Prevo*, 302 Ill. App. 3d at 1048. Here, the trial court kept cross-examination focused on whether defendant battered Bogaert, not whether Bogaert stole money from defendant, by limiting minimally probative but potentially prejudicial testimony such as how Bogaert obtained the safe combination. Accordingly, the court did not err in limiting cross-examination of how Bogaert obtained the safe combination.

¶ 44    Defendant's second allegation of error pertains to testimony that Bogaert was the initial aggressor. The first problem with defendant's argument is that the testimony he identifies was not testimony from Bogaert's cross-examination. Rather, defendant identifies his direct testimony from his case-in-chief. The next problem is that the court allowed him to testify that Bogaert was the aggressor. Defendant testified that Bogaert attacked him on the afternoon of January 8. The only precluded testimony that defendant identifies was his testimony that Bogaert told him she wanted to have sex when he returned home from the Christmas party on January 8. To the extent defendant was trying to show Bogaert was motivated to physically confront him, the record already established that she listened to a recording of him having sex with another woman after the

Christmas party, and defendant admitted to sleeping with another woman. Bogaert's discovery of defendant's infidelity would have been upsetting regardless of whether she said she wanted to have sex with defendant the night before, and therefore the court did not err in limiting that line of questioning.

¶ 45    Even if, *arguendo*, the trial court abused its discretion in limiting cross-examination, any limitation was harmless beyond a reasonable doubt. See *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 91 (an improper denial of a defendant's right to cross-examine a witness regarding bias does not mandate reversal when the error was harmless). Here, the trial court heard testimony from defendant that Bogaert was the initial aggressor. Defense counsel did not ask Bogaert whether she attacked defendant first, but nevertheless, any examination of Bogaert about whether she was the initial aggressor would have been cumulative with defendant's testimony that she was the aggressor. See *Davis*, 185 Ill. 2d at 338 (explaining that an improper denial of cross-examination may be harmless for various reasons, including when the excluded testimony was cumulative with other evidence). In addition, the court heard other evidence about the safe combination. Gregorio testified in defendant's case-in-chief about her conversations with Bogaert, including about how Bogaert obtained the combination to defendant's safe. She testified that Bogaert told her she obtained the safe combination through defendant's email after he had misplaced the combination, and she also testified that Bogaert told her she took $60,000 and had her daughter pick up the money. Finally, we would be remiss not to mention the physical evidence, including photographs of a visible bruise under Bogaert's right eye, that supported her allegations that defendant struck her. For all these reasons, we reject defendant's argument that the trial court erred in limiting cross-examination of Bogaert.

¶ 46                              B. Limitation of Witness Testimony

¶ 47 Defendant next argues that the court erred in limiting Gregorio's testimony. Defendant claims his counsel attempted to elicit evidence from Gregorio, and the trial court did not allow the testimony. Specifically, defendant argues he tried to elicit testimony on three topics from Gregorio and Bogaert's conversations during the 30 days leading up to the alleged battery: (1) whether Bogaert told Gregorio she wanted defendant to hit her; (2) whether Bogaert told Gregorio she was going to ruin defendant's reputation; and (3) whether Bogaert told Gregorio she was going to make up stories about defendant. Defendant also argues the court effectively limited his examination of Gregorio to her January 6 conversation with Bogaert, thus limiting his examination on these three topics.

¶ 48 We disagree that the court limited defendant's examination of Gregorio regarding these three topics. In fact, defense counsel never sought to elicit the complained-of testimony. At no point in the record did defense counsel attempt to question Gregorio about whether Bogaert told her she wanted defendant to hit her, whether she wanted to ruin his reputation, or whether she was going to make up stories about him. *Cf. McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (a party cannot complain of error which he induced the court to make or which he consented). While defense counsel never asked Gregorio about these three topics, he did ask Bogaert about all three, and she denied them.

¶ 49 Moreover, we disagree that the court effectively limited Gregorio's testimony to the January 6 conversation. Here, the court limited Gregorio's testimony only on the topic of Bogaert's access to defendant's cell phone. After defense counsel asked Gregorio whether Bogaert told her, on or prior to January 6, that she had access to defendant's cell phone code, the court sustained the State's objections an explained as follows:

"You asked [Bogaert] about the combination of the defendant's safe, on January 6th; and you asked her a series of questions about January 9th of 2017.

The only conversation that I have is regarding the combination of the defendant's safe, on January 6th.

If you want to ask about that, that's fine; but anything else, I'm going to sustain the objection."

In context, the court's statement was not a blanket prohibition on all other topics or conversations beyond the January 6 conversation. Rather, the court limited what counsel could ask Gregorio about her January 6 conversation with Bogaert to questions about the safe combination. This is evident from the fact that the court subsequently allowed Gregorio to testify, over the State's objections, on topics beyond the January 6 conversation. Specifically, Gregorio testified that in a January 9 conversation, Bogaert told her that she took $60,000 from the safe, that her daughter was coming to pick up the money, and that the police were heading to defendant's home. After defense counsel elicited this testimony from Gregorio, he ended his examination without attempting to ask her about the three complained-of topics. We also note that earlier in Gregorio's direct examination, defense counsel asked her whether she had conversations with Bogaert during the time between the fall of 2016 and January 9, 2017. After Gregorio answered yes, counsel moved on to their January 6 conversations without asking about any of the three complained-of topics.

¶ 50                           C. Sufficiency of the Evidence

¶ 51    Defendant's final argument is that the State failed to prove him guilty beyond a reasonable doubt. First, he argues the State failed to show that he committed a domestic battery involving bodily harm, failed to show that he committed a domestic battery involving conduct of an insulting

or provoking nature, and failed to show that he interfered with the reporting of domestic violence. For domestic battery involving bodily harm, he argues the State did not prove his intent, he was justified in his actions, and he did not actually cause bodily harm. He argues that Bogaert was the aggressor, motivated by her anger at defendant's affair, and defendant acted to protect himself. For battery involving conduct of an insulating or provoking nature, defendant reiterates his argument that Bogaert was the initial aggressor. Finally, for interference with reporting of domestic violence, defendant argues there was no underlying domestic battery, there was a lack of evidence that he prevented her from calling the police, and the record did not support that Bogaert was afraid of him.

¶ 52    Second, defendant argues Bogaert's testimony was so unreasonable, improbable, and unsatisfactory that it justified reasonable doubt of defendant's guilt. Defendant cites to evidence of Bogaert's "felonious conduct," including her admissions that she took money from defendant's safe and that she recorded defendant's sexual encounter by placing a recorder in the car. He argues she essentially admitted to crimes of theft and eavesdropping. He also argues the evidence showed Bogaert had motive to be the initial aggressor, that she was impeached via defendant's and Gregorio's testimonies, and that she often could not recall details of certain events or conversations.

¶ 53    When reviewing the sufficiency of the evidence, the standard is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all essential elements of the offense beyond a reasonable doubt. *People v. Maples*, 2018 IL App (2d) 160557, ¶ 30. In reviewing the sufficiency of the evidence, we will not substitute our judgment for that of the trier of fact on the weight of the evidence or the credibility of the witnesses. *Id.* We do not retry the defendant, and we will reverse the defendant's conviction only where the evidence is

so unreasonable, improbable, or unsatisfactory that it justifies reasonable doubt of the defendant's guilt. *People v. Lissade*, 403 Ill. App. 3d 609, 612 (2010).

¶ 54    We hold that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt on all three counts. This case turned on witness credibility. Bogaert testified that defendant struck her in the face after she told him about the recording device she placed in the car. Both Bogaert and Elizalde testified to her injuries. Therefore, if the trial court reasonably believed Bogaert and not defendant, then the evidence supported the two domestic battery convictions. 720 ILCS 5/12-3.2(a) (West 2016) (a person commits domestic battery if he knowingly without legal justification causes bodily harm to a household member or makes physical contact of an insulting or provoking nature with a household member).

¶ 55    In addition, Bogaert testified that she was afraid after the attack and "knew better" than to contact the police right away. She testified that she feared for her life, and she testified that defendant stopped her from calling 911 on a downstairs land line. This evidence, if reasonably believed, supported interfering with the reporting of domestic violence. 720 ILCS 5/12-3.5(a) (West 2016) (the offense is committed when, after committing an act of domestic violence, one knowingly prevents or attempts to prevent the victim from calling 911 or making any report to law enforcement).

¶ 56    Here, the trial court found Bogaert's testimony credible and defendant's testimony incredible. With respect to Bogaert's testimony, the trial court explained:

> "Certainly I can understand somebody who has been threatened, beat two times, have their hair pulled *** might wait until a point when they knew the Defendant was gone before they called [the] police. *** [Bogaert] even testified at one point that she went back upstairs with the Defendant to keep the peace. Certainly I think that's the testimony of

somebody who's scared, who's terrified, who's afraid of the Defendant. *** I think that's justifiable actions by a victim of domestic battery *** that she waited until she knew when the defendant was leaving on January 9."

The court noted Bogaert admitted to taking money from defendant's safe, but it explained that because someone takes money does not mean they were not battered. It then cited the photographic exhibits, which showed Bogaert's injuries, including clear bruising under her right eye. Turning to defendant's testimony, the court continued:

"I don't think the Defendant's testimony was credible. First off, I was able to watch him testify. *** He was nervous on the stand. *** I've testified in cases and I know it's nerve-racking because I've been through it myself, but the Defendant went beyond having just nerves about testifying. He was shaking. He was fidgeting. He was constantly bouncing his leg. *** At one point he lashed out against one of the Assistant State's Attorneys and I had to remind him to calm down. I don't think that's the demeanor of somebody who's completely credible."

The court then discussed defendant's substantive testimony. It did not believe defendant's testimony that Bogaert lacked any injuries when he left the house on January 9. It did not believe Bogaert's wounds were self-inflicted. The court noted that Officer Elizalde, someone with "no ax to grind in this case," testified that he observed Bogaert's injuries on January 9.

¶ 57     The trial court's credibility determinations are accorded great deference (*People v. Brown*, 2013 IL 114196, ¶ 48), and here, the court's credibility determinations were not unreasonable. First, the physical evidence supported the court's credibility determinations. While defendant claimed Bogaert had no injury when he left for work on January 9, the photographic exhibits clearly depict bruising under her right eye, and Elizalde's testimony corroborated her injuries.

Second, it was reasonable to believe Bogaert waited to contact the police because she was afraid after defendant struck her and that she feared provoking further aggression. Finally, we reject defendant's argument that Bogaert's testimony was tainted by her "felonious conduct." She admitted to recording defendant and taking some money from the safe, and therefore we fail to see how this conduct shows she lacked credibility as a complaining witness. But more, her actions recording defendant and taking money from his safe did not directly go toward whether defendant struck her. Defendant would like us to believe these actions showed her bias or motivation for framing him, but these actions just as easily show defendant's motivation for striking Bogaert. In fact, her testimony was that he struck her immediately after she told him about the recording. It would be reasonable to believe defendant was angry or upset with Bogaert upon his discovery that she recorded him having sex with another woman. Accordingly, Bogaert's admissions to recording defendant and taking money from his safe do not render her testimony unreasonable, improbable, or unsatisfactory, and the evidence was sufficient to convict defendant beyond a reasonable doubt.

¶ 58                                        III. CONCLUSION

¶ 59      For the reasons stated, we affirm the judgment of the Du Page County circuit court.

¶ 60      Affirmed.