UNITED STATES of America, Appellee,

v.

Barton Jeffrey WILLIAMS, Appellant.

UNITED STATES of America, Appellee,

v.

Richard Lee THEUNER, Appellant.

Nos. 89–5340, 89–5357.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1990.

Decided May 3, 1990.

Thomas H. Jensen and Jonathan E. Fruchtman, Minneapolis, Minn., for appellants.

Elizabeth de la Vega, Minneapolis, Minn., for appellee.

Before BOWMAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

On March 24, 1989, a jury convicted Barton Jeffrey Williams and Richard Lee Theuner of aiding and abetting each other in the attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988), and for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988). The district court[1] sentenced each defendant to twenty-four months incarceration, three years supervised release, and ordered each defendant to pay a special assessment of $100. On appeal, Williams challenges the examination of his hands under an ultraviolet light as an unreasonable search and seizure. Theuner challenges the district court's denial of a requested jury instruction, and alleges a *Brady* violation by the prosecution for the nondisclosure of his November telephone bill. We affirm the defendants' convictions and sentences.

## I. BACKGROUND

On December 6, 1988, United Parcel Service employees intercepted and opened an overnight delivery package from Phoenix, Arizona, addressed to Theuner. The U.P.S. employees previously had intercepted and opened two packages addressed to Theuner because a U.P.S. driver reported that Theuner acted suspiciously when the driver delivered a package to him.[2] The U.P.S.

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. Pursuant to the U.P.S. "contract of carriage," U.P.S. reserves the right to open any package.

The U.P.S. will open a package if the package is incorrectly addressed, if it is damaged, or in the event of heavy insurance. U.P.S. agents testified that suspicious packages also are opened to check for contraband. *See United States v.*

unwrapped the first package on August 5, 1988. This package yielded several plastic bags which contained white powder and a green leafy substance. The U.P.S. notified the local law enforcement authorities, and a "field test," which is a preliminary drug screening test, was administered to each substance. The test, however, exhibited negative results and the package was resealed and delivered to Theuner. The U.P.S. suspended the second delivery on October 14, 1988. The package was unsealed, and the police tested a substance similar to "pie crust dough" that was discovered in several plastic bags. The initial results were negative and the package was reassembled and deposited at Theuner's residence. A subsequent test, however, identified the substance as methamphetamine.

The U.P.S. intercepted and unwrapped the December 6 package which produced a tupperware container with a bag of 110 grams of "uncut" cocaine [3] concealed underneath layers of chocolate chip cookies. Trial Transcript, vol. I, at 128–29. The police decided to make a controlled delivery of the package and substituted a bag containing crushed aspirin for the cocaine. The aspirin bag was coated with an invisible fluorescent powder which could be detected only under an ultraviolet light. The police obtained a search warrant for Theuner and his mobile home based on the contents of the package which was intercepted on October 14. Williams was not named in the warrant.

Posing as a U.P.S. agent, a police officer orchestrated the controlled delivery and several minutes later, officers entered the mobile home. The police discovered that the U.P.S. package had been opened and that the contents were scattered on the living room floor. The officers immediately arrested Theuner and Williams. Pursuant to an examination under an ultraviolet light, Williams' hands showed traces of the

fluorescent detection powder, but Theuner's hands did not.

During the search of the mobile home, the police seized an electronic gram scale, cutting agents, a notebook with drug notes, and $700. *Id.* at 44–45, 64, 67–68. Also, police seized several empty U.P.S. containers which had been shipped from Arizona, and telephone bills which listed long distance calls made to Phoenix, Arizona. *Id.* at 50–52, 54–56, 74. On his person, Williams had a receipt for a December 1, 1988, overnight delivery U.P.S. package sent to Eric Sharp in Arizona, and a telephone message slip listing Sharp's name and telephone number. *Id.* at 77, 79. From Williams' 1979 Chevrolet, police seized financial records for large amounts of unexplained assets, including a $4,516 stock purchase. *Id.* at 149, 155. At that time, Williams was earning $192 per week as a bank employee. *Id.* at 152.

A jury trial began on March 21, 1989. The jury returned the verdicts on March 24, 1989. Williams and Theuner were sentenced on June 22, 1989. As earlier indicated, the defendants raise three issues on appeal.

## II. DISCUSSION

### A. Ultraviolet light

■ Williams argues that the trial court erred in not suppressing the results of the ultraviolet light examination as the fruit of an unconstitutional search and seizure of Williams' person. Williams asserts that the black light examination was a search because it was designed to discover the presence of something which an individual would not expose to the public, and which cannot be detected by normal observation. The district court denied Williams' suppression motion because it found that the use of the ultraviolet powder and the subsequent exposure to ultraviolet light was not an unreasonable search. The court analogized the ultraviolet light examination to

---

*Williams,* No. 4–89–11, slip op. at 3–4 (D.C. Minn. Mar. 31, 1989).

**3.** "Uncut" cocaine usually has an 85–95% strength or purity level. During the manufac-

turing process, alkaloids from the coca leaf are produced and comprise 5–15% of the uncut substance. *See* Trial Transcript, vol. I, at 129.

the use of fingerprinting and voice exemplars, the employment of which does not violate the fourth amendment. *See United States v. Williams*, No. 4–89–11, slip op. at 17 n. 8 (D.C.Minn. Mar. 31, 1989). The court concluded that the ultraviolet light examination does not constitute a fourth amendment search. We agree. *See United States v. Richardson*, 388 F.2d 842, 845 (6th Cir.1968) (ultraviolet light examination does not constitute a fourth amendment search).

■ Also, even if the ultraviolet light examination were a search, its warrantless use in this case would be justified by exigent circumstances. Williams could have washed off the powder before a search warrant for his person could have been obtained. *See Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973) (warrantless seizure of fingernail scrapings was justified because of "ready destructibility of the evidence"). In addition, the police officers had probable cause to arrest Williams, and the ultraviolet light examination constituted a lawful search incident to his arrest. *See United States v. Baron*, 860 F.2d 911, 913–14, 917 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989).

### B. Jury instruction

As previously indicated, Theuner and Williams were charged with aiding and abetting each other in the attempt to possess with intent to distribute cocaine, and with conspiracy to distribute cocaine. The trial court instructed the jury that "[t]he term distribute means to deliver a controlled substance to the possession of another person, which in turn means the actual[,] constructive or attempted transfer of a controlled substance." Trial Transcript, vol. III, at 385. Theuner argues that he was entitled to the following jury instruction:

> You may not find the defendants guilty of Counts I or II unless you find beyond a reasonable doubt both of the following:
> a) they were not joint purchasers and joint users of the cocaine; and

b) they intended to distribute the cocaine to third persons.

Brief and app. for Theuner at 13.

We find that the Eighth Circuit has not adopted such a jury instruction on distribution, and that the evidence in this case does not support this instruction. The police seized a large amount of uncut cocaine, an electronic scale, cutting agents, drug notes, and cash, thus providing ample evidence of intent to distribute. Also, the district court gave the jury a "lesser included offense" instruction, which provided that simple possession was the "intent to possess and not the further distribution." Trial Transcript, vol. III, at 392. Thus, Theuner could make the same argument, that he merely possessed and did not intend to distribute the cocaine, under the lesser included offense instruction as under his proposed instruction. Accordingly, the district court did not err in refusing to give Theuner's jury instruction on distribution.

### C. Nondisclosure of the November telephone bill

■ At trial, Theuner argued that he did not know about the long distance telephone calls to Phoenix, Arizona, because he was not home when the calls had been made. Theuner asserted that Williams had used his mobile home for the deliveries and telephone calls while Theuner was at work. Theuner was working on a construction project during the warm summer months when the calls had been made, and Theuner alleged that the calls stopped when his construction job was over and he was home more often. The police were not able to determine whether Theuner knew of the telephone calls, or whether Williams telephoned Phoenix when Theuner was not home.

Prior to the trial, the government agreed to disclose all *Brady* material to the defendants, including all telephone records that it had in its possession. The government, however, retained telephone bills that it believed to be irrelevant or nonexculpatory. At trial, the government introduced several telephone bills which listed long distance calls to Phoenix, the last for a period end-

ing October 15, 1988. The government informed the court that it did not have a telephone bill for November and, thus, that it did not know if the telephone calls to Phoenix stopped when Theuner was finished with his construction job and was home more frequently. Following trial, the government prosecutor wrote a letter to Theuner that the government did have a copy of the November telephone bill, but that the prosecutor did not discover it until after the trial. The November bill did not list any long distance telephone calls to Phoenix.

Theuner argues that he is entitled to a new trial as a result of the prosecutor's failure to disclose the November bill, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. Theuner also contends that the prosecutor's rebuttal argument was made on the basis of false inferences. The district court rejected Theuner's arguments because it found that the "exculpatory value of the phone bill—if any—is clearly outweighed by the evidence presented at trial." *United States v. Williams*, No. 4–89–11, slip op. at 5–6, 1989 WL 51094 (D.C. Minn. May 16, 1989). The court found that the November bill was not the kind of evidence which, if presented at trial, would create a reasonable probability that the result in the proceedings would be different. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The court likewise held that the prosecution's closing argument "did not affect the jury's decision in any manner which would warrant a new trial." *Williams*, slip op. at 7 (D.C.Minn. May 16, 1989).

We agree. The evidence in this case was more than sufficient to support the jury's verdict, and the prosecution's disclosure of the November bill likely would not have produced a different result. Also, Theuner could have subpoenaed the telephone company and produced his own copy of the November bill to impeach any of the government's references concerning the completeness of the telephone records. Accordingly, we find that the district court did not err in refusing to grant Theuner a new trial based on the nondisclosure of the telephone bill.

### III. CONCLUSION

For the reasons set forth herein, we affirm the defendants' convictions and sentences.