2023 IL App (1st) 220299-U

No. 1-22-0299

Order filed June 21, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 14420 |
| | ) | |
| BRITTANI GRIEBAHN, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the second-stage dismissal of defendant's postconviction petition over her contentions that counsel on direct appeal rendered ineffective assistance by failing to argue that police use of detection powder in a package containing narcotics violated her Fourth Amendment rights and that the trial court improperly limited cross-examination regarding an "alternate suspect" theory.

¶ 2    Following a bench trial, defendant, Brittani Griebahn, was found guilty of one count of possession of a controlled substance (PCS) with intent to deliver and two counts of simple PCS and was sentenced to 20 years' imprisonment. On direct appeal, we affirmed her convictions over

her challenge to the sufficiency of the evidence of possession and her claim of ineffective assistance of trial counsel. *People v. Griebahn*, 2019 IL App (1st) 171693-U. Defendant filed a petition for postconviction relief, alleging that police use of ultraviolet theft detection powder violated her Fourth Amendment rights, the State failed to prove that she knew that narcotics were inside a package addressed to her, and raising multiple claims of ineffective assistance of trial counsel and appellate counsel. Defendant now appeals from the second-stage dismissal of her petition, contending that (1) police use of theft detection powder violated her Fourth Amendment rights; (2) trial counsel rendered ineffective assistance by not filing a motion to suppress premised on the use of detection powder; and (3) counsel on direct appeal rendered ineffective assistance by not challenging the use of detection powder and by not raising the trial court's limitation of her cross-examination. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged with one count of PCS with intent to deliver (720 ILCS 570/401(a)(7.5)(A)(i) (West 2014)) and two counts of simple PCS (720 ILCS 570/402(a)(7.5)(A)(i) (West 2014); 720 ILCS 570/402(c) (West 2014)). We previously detailed the evidence at trial in our order resolving defendant's direct appeal. See *Griebahn*, 2019 IL App (1st) 171693-U. We recite only those facts that are germane to the issues raised in this appeal.

¶ 5                          A. Motion to Suppress Evidence

¶ 6      Prior to trial, defendant filed a motion to suppress evidence and a motion to suppress her statements to police.[1] The motion to suppress evidence alleged that defendant was arrested without

---

[1] Defendant's motion to suppress her statements, which the trial court granted in part and denied in part, is not at issue in this appeal.

a warrant or probable cause and that the narcotics at issue were "in the direct and actual possession of another person located in the residence."

¶ 7    Mount Prospect police detective William Ryan and U.S. postal inspector Michael Todd testified at the hearing on defendant's motion to suppress evidence. Their testimony established that, in July 2015, federal law enforcement intercepted a package at O'Hare International Airport, addressed to defendant at 1094 South Tamarack Drive, apartment 485 in Mount Prospect, with a return address in Germany. A dog sniff indicated that narcotics were inside the package, and a field test confirmed that the package contained methylenedioxymethamphetamine (MDMA, also known as ecstasy) inside a DVD case. A Department of Homeland Security (DHS) agent conveyed this information and the package to Mount Prospect police. On July 22, 2015, Ryan obtained an anticipatory search warrant authorizing a search of "[a]ny person taking control of a US Postal Service black envelope addressed to Brittani Griebahn, 1094 S. Tamarack Drive, number 485, Mount Prospect, Illinois." That day, Todd installed a light sensor that activated when the package was opened and a trip wire that activated when the DVD case was removed from the package. A court order authorized the installation of these devices.[2] Todd then left a delivery slip at the apartment. Approximately an hour later, a woman whom Todd identified as defendant called him; Todd arranged a delivery time for the next day.

¶ 8    On July 23, 2015, Todd placed theft detection powder, which glowed when exposed to ultraviolet light, on the exterior of the DVD case. At approximately 12:55 p.m. that day, Todd went to 1094 South Tamarack dressed as a mail carrier while Ryan waited in a vehicle outside the

---

[2] The exhibits that were admitted at the suppression hearing are not included in the record on appeal.

apartment building. Todd knocked on the door of apartment 485, and a man named Marek Mikolajczyk answered. Mikolajczyk signed for the package and went back inside the apartment. Todd returned to a postal vehicle outside, where Ryan was located, and the alarms for the light sensor and trip wire activated within minutes. Ryan and other officers entered the apartment to execute the search warrant and Todd entered after them. Ryan found defendant, whom he identified in court, and Mikolajczyk in a bedroom and handcuffed them. Two detectives positioned outside the bedroom window told Ryan that they saw an "unknown subject forcibly remove the screen" and throw the DVD case out of the window; they recovered it. Ryan acknowledged that neither he nor any officer under his command saw defendant take control of the package.

¶ 9      Todd entered the apartment after the officers and saw defendant, whom he identified in court. Todd examined defendant's hands with an ultraviolet light and saw "[a] large amount of the ultraviolet powder" on both hands. He also saw a "miniscule amount" of ultraviolet powder on one of Mikolajczyk's hands. Todd identified photographs of the powder on defendant's hands, visible under the ultraviolet light.

¶ 10     Defendant argued that the anticipatory search warrant only authorized a search of the person who took possession of the package, which, as far as the officers knew, was Mikolajczyk. She also contended that Todd's observation of detection powder on her hands was an illegal search because it required the use of an ultraviolet light to see things that would not be visible to the unassisted eye. The State argued that the officers were lawfully inside the apartment pursuant to the search warrant and that the detection powder showed that defendant had taken control of the package, which, along with the package being addressed to her, supported probable cause for her arrest.

¶ 11 The court denied defendant's motion to suppress. The court found that "the officers had probable cause to arrest defendant with or without a search warrant" because the package was addressed to her, it was opened within minutes of delivery, and no one answered the door when the police knocked, suggesting consciousness of guilt. The court also concluded that the detection power showed that defendant "was the only person who was exerting control over this envelope or package" and held "there was a proper search, whether it was incident to a lawful arrest or incident to the achievement of the search warrant."

¶ 12                                         B. Trial and Direct Appeal

¶ 13 At defendant's bench trial, U.S. Customs and Border Protection officer Jeffrey De La Cruz testified to the recovery of the package at O'Hare International Airport and its subsequent delivery to DHS.

¶ 14 Ryan and Todd testified consistent with their testimony at the suppression hearing. Ryan also testified that, on the kitchen counter of the apartment, he found the mailer envelope that the DVD case was packaged in and the delivery slip that Todd left the day before. In addition, Ryan found a plastic bag containing six yellow pills and two orange pills underneath the kitchen sink, and empty capsules, digital scales, a cannabis grinder, and pipes commonly used to smoke cannabis inside a kitchen cupboard. At the police station, defendant stated that "the package wasn't meant for anyone else and that Marek [Mikolajczyk], her boyfriend, should not be getting arrested." Mikolajczyk was released without charges.

¶ 15 During Todd's cross-examination, the trial court sustained the State's objections to some of defendant's questions about Todd's conversation with Mikolajczyk during delivery of the package, whether Todd told Ryan that Mikolajczyk accepted delivery of the package, whether

Todd gave Ryan a description of Mikolajczyk, and whether Ryan showed Todd a photograph of Mikolajczyk when Todd returned to the postal vehicle. During Ryan's cross-examination, the court sustained the State's objections to defendant's questions about whether Ryan knew that Mikolajczyk was a narcotics trafficker from Central Europe, whether he investigated any relationship between Mikolajczyk and the sender of the package in Germany, whether Mikolajczyk lived in the apartment, whether he knew that Mikolajczyk was in the apartment at noon on July 23, 2015, whether he searched Mikolajczyk's vehicle, and whether he designated Mikolajczyk as a suspect in his police report.

¶ 16    Mount Prospect police detective Johnathan Juhl testified that he saw a screen fall out of a second-floor window at the apartment building on July 23, 2015, and then a small item came out of the window. He recovered the item, saw that it was a DVD case containing apparent narcotics, and gave it to Ryan.

¶ 17    The parties stipulated to the chain of custody of the package between DHS and Mount Prospect police. They also stipulated that the DVD case contained approximately 70 grams of MDMA, and that the pills recovered from beneath the kitchen sink contained alprazolam.

¶ 18    The trial court found defendant guilty on all counts. Relevant here, the trial court found that defendant opened the package because she had detection powder "all over her hands," whereas Mikolajczyk only had a few specks of detection powder on his. The court also noted that defendant stated that the package was not meant for Mikolajczyk, that the package was addressed to her, that she was present at the delivery address when police executed the search warrant, and that the DVD case being thrown out the window demonstrated her consciousness of guilt. Defendant filed a motion for a new trial, which the trial court denied. The court merged the counts and sentenced

defendant to a total of 20 years' imprisonment. Defendant filed a motion to reconsider sentence, which was denied.

¶ 19    On direct appeal, defendant argued that the State failed to prove that she constructively possessed the MDMA because the evidence showed that both it and the apartment belonged to Mikolajczyk. *Griebahn*, 2019 IL App (1st) 171693-U, ¶ 24. Defendant also contended that trial counsel rendered ineffective assistance because "he failed to challenge the validity of the anticipatory search warrant on grounds that it did not explicitly give police authorization to insert the theft detection powder into the package." *Id.* ¶ 40. We affirmed defendant's convictions. *Id.* ¶ 57. With respect to defendant's ineffective assistance claim, we explained that:

> "even assuming that the officers erred in placing the theft detection powder in the package without court authorization, we would nevertheless conclude that there was no prejudice. The record supports that the anticipatory warrant was valid and supported by a sufficient factual basis and it was also executed in accordance with its terms. As such, a motion to quash would have been futile." *Id.* ¶ 49.

¶ 20                              C. Postconviction Proceedings

¶ 21    Defendant's amended postconviction petition, which is at issue in this appeal, alleged two claims of "plain error" and six claims of ineffective assistance of counsel. The "plain error" claims alleged that (1) the officers' warrantless use of detection powder in defendant's mail violated her Fourth Amendment rights; and (2) under the "unopened package doctrine," the State failed to prove that defendant knew what was inside the DVD case. Defendant alleged that trial counsel rendered ineffective assistance by failing to (1) file a motion to suppress challenging the use of detection powder; (2) file a motion for a new trial raising the "unopened package doctrine;" and

(3) preserve challenges to Ryan's testimony about defendant's confession. Defendant also alleged that counsel on direct appeal rendered ineffective assistance by failing to challenge (1) the constitutionality of the use of detection powder; (2) the evidence of defendant's knowledge of the contents of the DVD case; and (3) the trial court's limitation of her cross-examination regarding Mikolajczyk.

¶ 22    The trial court advanced defendant's petition to the second stage. The State filed a motion to dismiss, which argued that defendant's petition was "simply an attempt to relitigate the direct appeal" and claims that should have been raised on direct appeal. The State also contended that defendant's "plain error" claims and her claim regarding the trial court's limitation of cross-examination would not have been successful on direct appeal had appellate counsel raised them. In response, defendant argued that appellate counsel failed to cite case law in support of her argument regarding the use of detection powder and failed to challenge the trial court's limitation of her cross-examination of Ryan, and that the State did not explicitly move to dismiss her claims of ineffective assistance of trial counsel.

¶ 23    At oral argument on the State's motion to dismiss, postconviction counsel was unable to cite case law supporting his contention that the use of detection powder in defendant's mail violated the Fourth Amendment. Postconviction counsel also acknowledged that he presented no evidence in support of his claim that Mikolajczyk was a confidential informant for the Mount Prospect police, and that "you can call [that claim] speculation."

¶ 24    The trial court granted the State's motion to dismiss. Relevant here, the court found that defendant's claim that police violated the Fourth Amendment by inserting detection powder into her mail without judicial authorization was procedurally barred because she could have raised it

on direct appeal. The court also held that issue preclusion applied because, on direct appeal, we rejected the essence of that claim in resolving defendant's claim of ineffective assistance of trial counsel for not filing a motion to suppress based on the use of detection powder. Next, the court found that defendant forfeited her claims of ineffective assistance of trial counsel because they could have been raised on direct appeal. In addition, the court concluded that appellate counsel did "allege reversible error in connection with the theft detection powder" and that case law cited by defendant did "not come close to showing a substantial denial of constitutional rights." Finally, the court found that appellate counsel's decision not to challenge the trial court's limitation of defendant's cross-examination was reasonable because trial counsel thoroughly cross-examined Ryan and Todd, and because defendant was able to present her "alternate suspect theory" involving Mikolajczyk to both the trial and appellate court.

¶ 25    Defendant timely appealed.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, defendant contends that we should reverse the second-stage dismissal of her postconviction petition. Specifically, defendant appeals the dismissal of her Fourth Amendment claim regarding police use of detection powder, one claim of ineffective assistance of trial counsel for failing to file a motion to suppress evidence based on the use of detection powder, and two claims of ineffective assistance of appellate counsel for failing to raise the detection powder issue and the trial court's limitation of cross-examination regarding Mikolajczyk as a potential "alternate suspect" or police informant.

¶ 28    The Post-Conviction Hearing Act provides a three-stage process for a criminal defendant to allege that her conviction was the result of the substantial denial of her constitutional rights. 725

ILCS 5/122-1 *et seq.* (West 2014); *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17. The trial court dismissed defendant's petition at the second stage. At the second stage, the trial court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Myles*, 2020 IL App (1st) 171964, ¶ 17. If the defendant makes such a showing, then she is entitled to a third stage evidentiary hearing. *Id.* The trial court may only dismiss a petition at the second stage if the allegations, liberally construed in favor of the defendant and taken as true, do not make a substantial showing of a constitutional violation. *People v. Sanders*, 2016 IL 118123, ¶ 31. We review the second-stage dismissal of a postconviction petition *de novo* (*id.*), meaning that we perform the same analysis that the trial court performed (*In re N.H.*, 2016 IL App (1st) 152504, ¶ 50).

¶ 29                                      A. Forfeiture

¶ 30    We first consider whether defendant has properly preserved her postconviction claims. "A postconviction proceeding is a collateral attack on a final judgment, and constitutional issues that were raised and decided on direct appeal are barred from postconviction consideration are barred by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *People v. Wilson*, 2023 IL 127666, ¶ 22 (not yet released for publication and subject to revision or withdrawal) (citing *People v. Taliani*, 2021 IL 125891, ¶ 53).

¶ 31    Defendant could have raised her Fourth Amendment claim regarding the use of detection powder on direct appeal. That issue was apparent from the record when defendant filed her direct appeal. During the hearings on defendant's motion to suppress evidence and at trial, Detective Ryan and Inspector Todd testified about the use of detection powder on the day of defendant's arrest. Because defendant did not raise this issue on direct appeal, she has forfeited it. Defendant's

related claim of ineffective assistance of trial counsel is also procedurally barred. On direct appeal, defendant argued that trial counsel was ineffective because he did not "challenge the validity of the anticipatory search warrant on grounds that it did not explicitly give police authorization to insert the theft detection powder into the package." *Griebahn*, 2019 IL App (1st) 171693-U, ¶ 40. Defendant's postconviction claim that trial counsel rendered ineffective assistance by failing to file a motion to suppress that challenged the use of the detection powder is the same as the claim that we rejected on direct appeal (see *id.* ¶ 54), so it is barred by *res judicata.*

¶ 32     That leaves defendant's claims of ineffective assistance of appellate counsel. A postconviction petitioner can avoid forfeiture by framing claims that could have been raised on direct appeal as claims of ineffective assistance of appellate counsel. *People v. Addison*, 2023 IL 127119, ¶ 23 (not yet released for publication and subject to revision or withdrawal) (citing *People v. Turner*, 187 Ill. 2d 406, 413 (1999)). Defendant's petition alleged that appellate counsel rendered ineffective assistance by failing to challenge (1) the constitutionality of the use of detection powder; (2) the evidence of defendant's knowledge of the contents of the DVD case; and (3) the trial court's limitation of cross-examination regarding Mikolaczyk. She appeals only the dismissal of the first and third claims. These two claims of ineffective assistance of appellate counsel are not procedurally barred, so we will address their merits.

¶ 33                     B. Ineffective Assistance of Appellate Counsel

¶ 34     To establish that appellate counsel was ineffective, a defendant must satisfy the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Illinois Supreme Court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. English*, 2013 IL 112890, ¶ 33. Under the *Strickland* standard, a defendant must show both that appellate counsel's performance

was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful. *Id.* Appellate counsel is not obligated to raise " 'every conceivable issue on appeal;' " rather, counsel must " 'exercise professional judgment to select from the many potential claims of error that might be asserted on appeal.' " *Id.* (quoting *People v. Williams*, 209 Ill. 2d 227, 243 (2004)). That is, appellate counsel is not required to raise issues that he or she reasonably determines are not meritorious. *Id.* ¶ 34.

¶ 35                                                1. Detection Powder

¶ 36     Defendant contends that appellate counsel should have argued that police use of detection powder on the DVD case violated her Fourth Amendment rights because it was not authorized by the anticipatory search warrant or any other court order. Appellate counsel raised this issue on direct appeal, albeit framed as a claim of ineffective assistance of trial counsel. Specifically, appellate counsel argued that "trial counsel provided constitutionally deficient assistance because he failed to challenge the validity of the anticipatory search warrant on grounds that it did not explicitly give police authorization to insert the theft detection powder into the package," and that defendant "was prejudiced by this alleged error because the theft detection powder evidence was the State's strongest evidence connecting her to the MDMA."[3] *Griebahn*, 2019 IL App (1st) 171693-U, ¶ 40. We did not reach the constitutional question of whether the Fourth Amendment authorized the use of detection powder on the DVD case. *Id.* ¶¶ 48-49. However, we found that a motion to suppress evidence premised on the allegedly unconstitutional use of detection powder

_____

[3] The record reflects that, at the suppression hearing, trial counsel argued that Todd's use of an ultraviolet light to see detection powder on defendant's hands was an unlawful search under the Fourth Amendment because it was a specialized technique that revealed things that would not be visible to the unassisted eye. Counsel cited *Kyllo v. United States*, 533 U.S. 27 (2001) in support of this argument and discussed other case law with the trial court.

would have been futile because police recovered the MDMA pursuant to their lawful execution of the valid anticipatory search warrant. *Id.* ¶ 49. The activation of the light sensor and trip wire triggered the execution of that valid search warrant, not the detection powder. *Id.* ¶ 50. We also found that "there was sufficient evidence to establish defendant's guilt even without consideration of the theft detection powder evidence," so defendant could not "show that had counsel challenged the theft detection powder as she asserts, there is a reasonable probability that the result of her trial would have changed." *Id.* ¶¶ 52, 54. Just as defendant could not establish prejudice on direct appeal, she cannot establish prejudice with respect to her claim of ineffective assistance of appellate counsel for failing to challenge the constitutionality of the use of detection powder. Because trial counsel was not ineffective for not challenging the use of detection powder under the Fourth Amendment, it follows that appellate counsel was not ineffective for not making the same argument. See *People v. Hayden*, 338 Ill. App. 3d 298, 310 (2003).

¶ 37     Defendant contends that appellate counsel was ineffective in presenting this claim because he did not cite legal authority in support of it. Defendant claims that counsel should have cited *Ex Parte Jackson*, 96 U.S. 727 (1878) for the proposition that the Fourth Amendment protects a person's reasonable expectation of privacy in their sealed mail, and *United States v. Jones*, 565 U.S. 400 (2012), which held that the use of a GPS tracking device to monitor a vehicle was a search within the meaning of the Fourth Amendment. However, the United States Supreme Court has also held that a person has no legitimate interest in possessing contraband, and government conduct that reveals only the possession of contraband does not implicate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005); see also *People v. Hill*, 2020 IL 124595, ¶ 29 ("No one possesses a legitimate interest in contraband."). That is the case here. The package at issue

contained only illegal narcotics stored in a DVD case, and the use of detection powder revealed only that defendant handled the DVD case containing the illegal narcotics. Even if appellate counsel had cited the cases defendant identifies, we likely would have concluded that the use of detection powder in this case did not violate the Fourth Amendment because defendant had no legitimate privacy interest to protect.

¶ 38     In addition, federal case law addressing the use of detection powder holds that an ultraviolet light examination of theft detection powder on a suspect's hands is not a search that implicates the Fourth Amendment. See, e.g., *United States v. Williams*, 902 F.2d 678, 681 (8th Cir. 1990); *United States v. Richardson*, 388 F.2d 842, 845 (6th Cir. 1968). *Williams* also supports a finding that, even if the Fourth Amendment applied, the use of detection powder and ultraviolet light examination of defendant's hands was justified by exigent circumstances because defendant could have washed her hands, and that the ultraviolet light examination was a lawful search incident to her arrest. See *Williams*, 902 F.2d at 681; see also *United States v. Baron*, 860 F.2d 911, 918 (9th Cir. 1988) (ultraviolet light examination of the defendant's hands was a lawful search incident to arrest).

¶ 39     *People v. McPhee*, 256 Ill. App. 3d 102 (1993), which defendant cites, did not involve a postconviction petition, a claim of ineffective assistance of appellate counsel, or the use of detection powder. While *McPhee* has some factual similarities to this case, the central issue in *McPhee* was trial counsel's failure to move to suppress the warrantless search the defendant's home, which did not occur in this case. See *McPhee*, 256 Ill. App. 3d at 105-111. Accordingly, we affirm the dismissal of defendant's claim of ineffective assistance of appellate counsel for failure to challenge the constitutionality of the use of detection powder in this case.

¶ 40                    2. Limitation of Cross-Examination Regarding Mikolajczyk

¶ 41    Defendant also contends that appellate counsel should have argued that the trial court erred by limiting her cross-examination of Ryan and Todd regarding whether Mikolajczyk was an "alternate suspect" or police informant. According to defendant, the trial court "completely thwarted" the development of her theory that Mikolajczyk was "a narcotics trafficker known to the Mt. Prospect Police Department who was using [defendant's] name, address and apartment to 'receive' and intercept an international delivery of MDMA that he had ordered, possibly from a person he knew in Europe." Defendant also alleges that Mikolajczyk was "a recent parolee" and "a high value 'confidential informant' for the Mt. Prospect Police Department," which the State did not disclose. Defendant contends that she "was not allowed to ask questions to determine if this 'confidential informant' theory was true, or to lay the foundation for a mistrial."

¶ 42    A criminal defendant has a constitutional right to cross-examine the witnesses against her. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Klepper*, 234 Ill. 2d 337, 355 (2009). However, the trial court has discretion to impose reasonable limits on cross-examination based on concerns regarding relevance, repetition, prejudice, confusion of the issues, harassment, and the witness's safety. *Klepper*, 234 Ill. 2d at 355. Alternate suspect evidence is subject to the standard relevance inquiry, and the trial court may exclude speculation regarding alternate suspects. *People v. Mayberry*, 2020 IL App (1st) 181806, ¶ 39 (citing *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000)). The ultimate question is "whether [the] defendant's inability to make the inquiry created a substantial danger of prejudice by depriving [her] of the ability to test the truth of the witness's direct testimony." (Internal quotations omitted.) *Klepper*, 234 Ill. 2d at 356. We

consider the record in its entirety and the alternative methods available to the defendant to impeach the witness. *Id.*

¶ 43    Defendant has not established prejudice with respect to this claim of ineffective assistance of appellate counsel. Defendant cross-examined the State's witnesses on, *inter alia*, how Todd applied the detection powder to the DVD case, how Ryan obtained Mikolajczyk's photograph and contact information, the fact that no officer saw defendant holding the package, and the lack of fingerprinting of the package and DVD case. Her cross-examinations of Ryan and Todd span more than 70 pages of the reports of proceedings. The trial court only limited *some* of defendant's cross-examination on her theory that Mikolajczyk ordered the MDMA from a relative in Germany. There was no constitutional issue with this limitation of defendant's cross-examination. See *People v. Edwards*, 218 Ill. App. 3d 184, 194 (1991) (a constitutional issue does not arise merely because defendant was prohibited from pursuing one particular line of questioning). Had counsel raised this issue on direct appeal, we would have reviewed the trial court's rulings for abuse of discretion. See *People v. Wilson*, 2012 IL App (1st) 092910, ¶¶ 23-24 (abuse of discretion standard applies to review of a trial court's limitation of cross-examination when no constitutional issue exists). Abuse of discretion is the most deferential standard of review next to no review at all. *People v. Holman*, 402 Ill. App. 3d 645, 650 (2010). Given that standard of review, it is unlikely that defendant would have prevailed on this issue had appellate counsel raised it.

¶ 44    Moreover, we conclude that a more thorough presentation of defendant's "alternate suspect theory" would not have changed the outcome of trial. Even if defendant had elicited evidence that Mikolajczyk ordered the MDMA from a relative in Europe and arranged for its delivery to defendant's apartment, that would not have negated defendant's possession of the MDMA in the

apartment on July 23, 2015. Possession of contraband can be joint, so Mikolajczyk was more akin to an accomplice than an alternate suspect whose possession of the MDMA would vindicate defendant. See *People v. Givens*, 237 Ill. 2d 311, 338 (2010). Moreover, defendant's suggestion that Mikolajczyk was an undisclosed confidential informant for the Mount Prospect police is speculation. If defendant had evidence to suggest that was the case, she should have presented it in support of her postconviction petition. Altogether, the record indicates that not allowing defendant to shift blame to Mikolajczyk via cross-examination of Ryan and Todd had no impact on the outcome of trial. Appellate counsel did not render ineffective assistance by not raising that argument.

¶ 45    Defendant argues that the applicable prejudice analysis asks not whether the outcome of trial would have been different, but whether the trial court would have had a different impression of Ryan and Todd's credibility had she been allowed to cross-examine them about Mikolajczyk. We disagree. This is a claim of ineffective assistance of appellate counsel, and prejudice in this context means "a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." See *People v. Golden*, 229 Ill. 2d 277, 283 (2008). For the appeal to have been successful, appellate counsel would have had to show that the trial court abused its discretion in limiting cross-examination about Mikolajczyk. See *Wilson*, 2012 IL App (1st) 092910, ¶¶ 23-24. In making that determination, we would have viewed the trial record as a whole (see *Klepper*, 234 Ill. 2d at 356), not the impact on Ryan or Todd's testimony alone. For the same reasons, we reject defendant's contention that harmless error analysis applies to "the constitutionally improper denial of [her] confrontation right." Had counsel raised this issue on direct appeal, the abuse of discretion standard would have applied for the reasons explained above.

¶ 46    Defendant also contends that cross-examination would have undermined Ryan's credibility by showing his "favoritism or bias" toward Mikolajczyk. She insists that a showing of Ryan's bias in favor of Mikolajczyk would have undermined Ryan's credibility about her statement that the package belonged to her and not Mikolajczyk. Defendant claims that, in that scenario, she "might not have waived her right to testify," would have denied telling Ryan that the package belonged to her, and could have "w[o]n the 'he said/she-said' credibility battle." This imagined scenario is far too speculative to support postconviction relief, and defendant's affidavit attached to her petition provides no support for it. More broadly, even if defendant showed that Ryan treated Mikolajczyk favorably, that would not have supported an inference that Ryan testified untruthfully about the evidence against defendant, nor would it have negated defendant's guilt for PCS. Accordingly, we affirm the second-stage dismissal of defendant's postconviction petition.

¶ 47                                III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the dismissal of defendant's post-conviction petition.

¶ 49    Affirmed.