2024 IL App (1st) 230029-U

FIRST DIVISION
February 26, 2024

No. 1-23-0029

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 07 CR 08965 (2) |
| BRYAN ESTRADA, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Ursula Walowski, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Pucinski specially concurred in the judgment.
Justic Coghlan dissented.

**O R D E R**

¶ 1    *Held*: The defendant's sentence is vacated, and the matter is remanded for a new sentencing hearing because of trial counsel's ineffectiveness.

¶ 2    After a jury trial in the circuit court of Cook County, the 23-year-old defendant, Bryan Estrada, was convicted of first-degree murder and attempted first degree murder, committed by

personally discharging a firearm, and sentenced to 80 years' imprisonment. During the following decade-long postconviction proceedings and after a third stage evidentiary hearing on the defendant's successive postconviction petition, the circuit court ordered that a new sentencing hearing be held. Following that resentencing hearing, the circuit court sentenced the defendant to the mandatory minimum term of 71 years in prison. The defendant now appeals, contending that this mandatory *de facto* life sentence violates the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11), as applied to him. Specifically, he asserts that although he committed the crime when he was a young adult and has since made significant progress towards rehabilitation, the current 71-year sentence forecloses any possibility of him becoming a productive member of society. The defendant also argues that in resentencing him to the minimum mandatory sentence, the circuit court misapprehended the law and believed that it could not impose a sentence below 71 years. In the alternative, the defendant asserts that his trial counsel was ineffective for not alerting the circuit court to the relevant case law concerning the proportionate penalties clause, which would have permitted it to impose a lower sentence. For the following reasons, we reverse and remand with instructions.

¶ 3                                    I. BACKGROUND

¶ 4      Because the record before us is voluminous as it spans over a decade, we set forth only those facts and procedural history relevant to the resolution of this appeal.

¶ 5      In 2007, together with codefendants Rufino and James Castillo, who are brothers, the defendant was charged with, *inter alia*, first degree murder (720 ILCS 5/9-1(a)(1)-(2) (West 2006)) and attempted first degree murder (720 ILCS 5/8-4(a) (West 2006)) for his involvement in the March 25, 2007, drive-by-shooting, which resulted in the death of Luis Villegas, and the attempted murder of Edgar Martinez. The defendant was tried together with codefendant Rufino before

separate juries. Codefendant James' charges for first degree murder were dropped after he pleaded guilty to concealing and aiding a fugitive[1] in exchange for his testimony at the defendant's trial.

¶ 6      Summarized, the evidence adduced at that trial revealed the following. On March 25, 2007, the two victims, Edgar and Luis, were in Edgar's SUV when they spotted a red car with codefendants Rufino and James inside. The two victims, who were both members of the Spanish Gangster Disciples, knew the two codefendants from the neighborhood because they were members of the rival Imperial Gangsters street gang. Even though the two victims were unarmed, they decided to drive around looking for the codefendants to "mess with them," *i.e.*, "talk crap to them *** like fight them. Start trouble with them."

¶ 7      When a little later they encountered the codefendants' red car in a nearby alley, Edgar, who was driving, stopped the SUV, while Luis "threw gang signs" at the codefendants. According to Edgar, at this point there were four individuals inside the red car: codefendant James, who was driving; codefendant Rufino, who was in the passenger seat; and two other individuals, who were seated in the back. The occupants of the red car responded by "throwing gang signs" back. At that point, one of the individuals who had been sitting in the back of the red car and whom Edgar later identified as the defendant, exited the back seat, from the driver's side, pulled out a handgun and shot in Edgar's direction. Edgar, who was uninjured, drove off and stopped a few blocks later to check on Luis, at which point he realized that Luis had been shot in the head, and was dead. Edgar called 911.

¶ 8      Chicago Police Detective Steven Suvada testified that when he spoke to Edgar at the crime scene, Edgar identified codefendants James and Rufino by name and described the shooter as a Hispanic male with a "fade haircut," between 5'4" and 5'7". Edgar subsequently identified

---

[1] As part of his plea deal, James was sentenced only to probation for this crime.

the defendant from both a photo array and a lineup as the shooter. Detective Suvada admitted that the police identified the fourth occupant of the red car as Carlos Vasquez but never charged him with any crimes.

¶ 9 Codefendant James, who had made a plea deal with the State, next testified that on March 25, 2007, he was driving the red car around Avondale, with codefendant Rufino in the passenger seat, and two other occupants in the back: the defendant, who was behind the driver's seat, and another individual whom James only knew as "Carlos." At some point, as he was driving down an alley, an SUV blocked his path. Codefendant James saw the passenger door on the SUV crack open a little. After that he heard gunshots coming directly from behind. While codefendant James admitted that he did not see anyone throwing gang sings, shooting, or holding a gun, he stated that as he went down for cover, he heard the door behind him close and realized that the defendant had fired the shots. Because the defendant then started shouting at him to "get out of there," codefendant James drove off. He stopped near Fullerton Avenue to allow Carlos and the defendant to get out of the car. On cross-examination, James admitted that he did not go to the police with this information until a year-and-a half after the shooting, even though his brother Rufino had been implicated and was being prosecuted for the crime.

¶ 10 After deliberations, the jury found the defendant guilty of the first-degree murder of Luis and the attempted first-degree murder of Edgar. The jury further found that "during the commission of the offense of first-degree murder, the defendant personally discharged a firearm that proximately caused" Luis's death.

¶ 11 A presentence investigation report (PSI) was prepared on September 3, 2009, in anticipation of the defendant's original sentencing hearing. That PSI, which is part of the impounded record on appeal reveals the following relevant information about the defendant. The

defendant was born in Guatemala in 1983. He moved to the United States with his parents and four siblings when he was 10 years old. While the defendant described his childhood as "normal" he stated that his father had a history of alcohol abuse and that he "suffered emotional scars witnessing his father physically abuse his mother."

¶ 12    The defendant stated that he never completed high school because he changed schools after his family moved to the north side of Chicago whereupon he was told that he was too old to remain a student. The defendant later attended Job Corps for six months studying for his GED and "cable networking," but left the program early to "address some personal problems in his life." Prior to his incarceration, the defendant worked as a handler for a company, a laborer at a bakery, and a hardwood floor installer.

¶ 13    According to the PSI, the defendant had no prior juvenile adjudications, and only one prior criminal conviction in case No. 02 CR 11582 for aggravated unlawful possession of a weapon (AUUW) for which he was sentenced to one year of probation with boot camp, and which was terminated satisfactorily in June 2004.

¶ 14    In addition, according to the PSI the defendant admitted that he joined the Imperial Gangsters when he was 17 years old because all his friends were joining the gang and "to meet girls." He also stated that he was 17 when he tried alcohol and marijuana for the first time. He did not like smoking marijuana because it made him "feel lazy" and quit after his sister nagged at him to stop. He drank about three or four times a week and got drunk every time he consumed alcohol, even though he did not enjoy it. The defendant claimed that he terminated his affiliation with the Imperial Gangsters in 2002 after he took an anger management class while in boot camp. He denied having any rank in the gang but admitted to having several gang tattoos.

¶ 15    Based on the PSI, the severity of the offense, and the defendant's prior criminal

conviction for a crime involving the possession of a weapon, the circuit court sentenced the defendant to consecutive prison terms of 50 years for first degree murder and 30 years for attempted first degree murder, for a total of 80 years' imprisonment. We affirmed the defendant's conviction on April 19, 2012. See *People v. Estrada*, 2012 IL App (1st) 100265-U.

¶ 16    On March 26, 2013, the petitioner filed his initial *pro se* postconviction petition, arguing that he received ineffective assistance of trial counsel because counsel failed to call Carlos as a witness at his trial. The circuit court dismissed the petition, and we affirmed that dismissal on March 23, 2016. See *People v. Estrada*, 2016 IL App (1st) 141806-U.

¶ 17    On May 14, 2019, the defendant filed a successive *pro se* postconviction petition, raising a claim of actual innocence based on newly discovered evidence in the form of affidavits from Carlos, Virginia Estrada, and Miguel Ruiz. On July 8, 2020, private attorney, Steven Becker, entered an appearance on behalf of the defendant and filed a supplemental successive petition alleging that the defendant was entitled to a new sentencing hearing because the circuit court had improperly considered the defendant's sole prior conviction for AUUW in case No. 02 CR 11582, in sentencing him to 80 years' imprisonment, even though that prior conviction had since been declared void.

¶ 18    The State filed a motion to dismiss the actual innocence claim but acknowledged that the defendant's request to be resentenced was meritorious and should proceed to an evidentiary hearing.

¶ 19    After the third-stage evidentiary hearing, the circuit court denied the defendant's claim of actual innocence but granted him a new sentencing hearing. We subsequently affirmed the denial of the defendant's actual innocence claim. See *People v. Estrada*, 2022 IL App (1st) 211417-U.

¶ 20    On September 23, 2021, the circuit court ordered that a new PSI be prepared in

anticipation of the resentencing hearing. That report was due on December 15, 2021. On November 21, 2021, the investigating officer attempted to interview the defendant for the PSI. The defendant, however, informed the investigating officer that because his attorney, Becker, had filed a motion to withdraw his representation on November 2, 2021, he was waiting on the appointment of new counsel. The defendant informed the investigating officer that he wished to confer with his new defense counsel prior to answering any questions. As such, aside from confirming that the defendant has no prior criminal background, the new PSI contains no information whatsoever about the defendant.

¶ 21     After attorney Becker's motion to withdraw was granted, the Office of the Public Defender was appointed to represent the defendant. Inexplicably, new defense counsel did not request that the circuit court order an additional PSI.

¶ 22     Instead, on July 12, 2022, counsel filed a sentencing memorandum, which was again bizarrely titled "Sentencing Offenders Under Twenty-One," even though the defendant was 23 when he committed the instant crime. Therein, counsel first pointed out that the Illinois proportionate penalties clause is broader than the eighth amendment because it seeks to restore offenders to useful citizenship. Counsel next discussed recent developments in law regarding the sentencing of youthful offenders. Citing *Graham v. Florida*, 560 U.S. 48 (2020), *Roper v. Simmons*, 543 U.S. 551 (2005) and *Miller v. Alabama*, 567 U.S. 460 (2012) counsel noted that the U.S. Supreme Court acknowledged three significant differences between juvenile offenders and adults, including: (1) a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity and risk-taking; (2) vulnerability to negative influences from outside pressures; and (3) a yet undeveloped character, which makes their actions "less likely to be evidence of irretrievable depravity." *Roper*, 543 U.S. at 569-70.

¶ 23    Counsel next cited *People v. House*, 2019 IL App (1st) 110580-B, *reversed in part, vacated in part by* 2021 IL 125124, noting that in that case, this appellate court had reversed a natural life sentence for a crime committed by a defendant who was 19 years old. Counsel pointed out that *House* cited several studies showing that young adults are more like juveniles than fully mature adults. Counsel then asserted that the defendant here was 23 years old at the time of the shooting and that studies have shown that the brain is still immature until 25 years of age. Counsel made no further arguments as part of his sentencing memorandum.

¶ 24    In support, counsel attached IDOC records documenting numerous courses the defendant had taken while incarcerated. These included certificates for: (1) the Illinois Community College high school equivalency program; (2) an adult education high school program from King Word's Academy; (3) vocational services from the Division of Adult Education; (4) a Shingle Quality Specialist training program; (5) the Menard Correctional Center's Impact of Crime on Victims program; and (6) an art and painting workshop. Counsel also attached a September 19, 2021, letter from the dean of Lakeland College to the defendant, informing him that he had been placed on a waiting list for college courses.

¶ 25    On December 12, 2022, the circuit court proceeded with the resentencing hearing. At the outset, defense counsel offered the new PSI into evidence. In response, the circuit court noted that there had been a previous PSI, which had been ordered for purposes of the original sentencing hearing. The court stated that it had studied that original PSI when examining the entirety of the defendant's record in reviewing his successive postconviction petition.

¶ 26    The court noted that it had also reviewed defense counsel's sentencing memorandum and the certificates of completion for the courses the defendant had taken while incarcerated, as well as letters offered in support of the defendant by his nephew, Sherwin Salazar, and one of his

sisters, Sandy Estrada.[2]

¶ 27    Defense counsel then called two witnesses, the defendant's second sister, Virginia Estrada, and his mother, Miriam, to the stand. Virginia testified that the defendant was a good brother and son and was innocent of the crimes he was accused of and asked the court to show mercy. Similarly, Miriam testified that the defendant was a good and hard-working person, and asked the court to have mercy because she was old and needed her son's support.

¶ 28    Defense counsel then presented the defendant's "grades" from his most recent paralegal studies, which had not been previously tendered to the court, and commented that the defendant was doing quite well in this course.[3]

¶ 29    The parties next proceeded with arguments. In aggravation, the State asserted that this was a gang related crime, and that the defendant and the victims were members of rival gangs. The State further argued that people who had been standing outside their homes at the time of the shooting were placed in jeopardy by the defendant's actions. The State pointed out that the minimum sentence for first degree murder with a firearm was 45 years (20 for murder plus 25 for the mandatory firearm enhancement) and that the minimum sentence for attempted first degree murder was 26 years (6 for attempted first degree murder plus 20 for the mandatory firearm enhancement). The State also pointed out that these sentences had to be served consecutively for a minimum sentence of 71 years imprisonment. The State therefore asked the court to impose that statutory minimum.

¶ 30    Defense counsel responded by asking the court to refuse to impose the firearm enhancements and the mandatory consecutive sentences because they deprived the court of discretion. Counsel asked the court to consider extending the reasoning in *Miller*, 567 U.S. 460

_____

[2] We note that these letters are not part of the record on appeal.

[3] These grades are not part of the record on appeal.

9

and *House*, 2019 IL App (1st) 110580-B, *reversed in part, vacated in part by* 2021 IL 125124,[4] regarding juvenile brain development to the defendant who was 23 years old at the time he committed the offense. As counsel pointed out: "[A]lthough the law has not caught up to the science yet, it has been determined that the brain is still immature up until at least the age of 25."

¶ 31      Counsel further argued that a *de facto* life sentence, such as the minimum statutorily mandated sentence of 71 years, should be reserved for "the worst of the worst" and the defendant did not fall into that category. As counsel pointed out, the defendant had no criminal background and has been a model prisoner. While incarcerated, he completed his high school diploma and numerous certificates from vocational, craftsman, roofing, and painting programs. Currently, he was partaking in a paralegal training course. Counsel asked the court not to render all of these rehabilitative efforts meaningless by imposing a *de facto* life sentence.

¶ 32      In addition, counsel argued that the facts of the case were not so egregious that they justified permitting the defendant to remain in prison for the rest of his life. As counsel pointed out, this offense occurred between rival gang members and the surviving victim admitted that he and the deceased victim drove around looking to instigate a fight with the occupants of the red car, including the defendant. Counsel also pointed out that the surviving victim was not struck by any of the bullets.

¶ 33      Based on all of these factors, counsel asked the court to impose a sentence in the range of 25 to 40 years in prison.

¶ 34      After counsel's arguments, the defendant, who was then 39 years old, spoke in allocution. The defendant stated that he was sincerely sorry for the family of the victim. He explained that in

---

[4]As shall be discussed further in the argument section, by the time of the resentencing hearing, the appellate court decision in *House* had been reversed in part on the basis that the record in that case was insufficiently developed and no factual findings were made to show how the science concerning juvenile maturity and brain development applied to the defendant in that case.

his 15 years of incarceration, he had learned the value of family and education. Even though he had little hope of surviving until his out-date of 2082, the defendant had decided to continue his education in the hopes that he might have a second chance at life. He stated that he obtained his 2012 high school diploma by mail because his out-date made it difficult to enroll in classes in IDOC. He received vocational certifications and completed a victim impact program. In addition, after receiving his high school degree, the defendant tried to enroll in college, but was placed on a waiting list because of his projected release date. The defendant stated that he was currently taking correspondence courses at the Black Stone Career Institute.

¶ 35    The defendant also averred that being in prison had changed his life in a positive way. He learned that with discipline and a positive outlook, he could control his thoughts and feelings and stay focused on his goals. He now believed that if he was humble, honest, and respectful, he could be a better person and lead a better life.

¶ 36    The defendant also stated that he has read books on personal growth, spirituality, and meditation and wants his life to mean something. He would like people to see someone who did good with his time. As a hard worker and life-long learner, he vowed to keep reading and improving his mind. The defendant asked for a second chance at life and promised to be a positive influence and contribute to society.

¶ 37    After the defendant's allocution, the circuit court sentenced the defendant to the statutory minimum of 71 years' imprisonment (40 for first degree murder and 26 for attempted first degree murder). In doing so, the court acknowledged that the defense was asking it to rely on recent case law and science to impose a sentence below the statutory minimum because the defendant's brain was immature at the time of the offense. The court, however, stated that based on the evidence presented, including the PSI, it could not go below the statutory minimum, which was

set by the legislature. The court noted that it appreciated the good things the defendant had done while in custody but stated that it had to follow the law. The court noted that while the defendant underwent some family trauma, he had siblings, all of whom were doing well. The court stated that the defendant was in prison because he chose to join the Imperial Gangsters. Based on this decision and the crimes he committed, the legislature had determined the appropriate sentence. The court ultimately held that "simply arguing" that the defendant's "brain was not developed at 23" alone was insufficient to warrant a sentence below the statutory minimum. The defendant now appeals.

¶ 38                                      II. ANALYSIS

¶ 39     On appeal, the defendant argues that his 71-year sentence is unconstitutional as applied to him under the proportionate penalties clause because even though he had no prior criminal background and was only 23 years old when he committed the crime, and despite his subsequent and significant rehabilitative efforts in prison, this *de facto* sentence forecloses any possibility of him ever being restored to "useful citizenship." See Ill. Const. 1970, art. I, § 1. *Id.* ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship"). He further argues that even though serious, his "terrible but impulsive" act of shooting at rival gang members during a gang altercation precipitated by the victims themselves is not so egregious that it justifies nullifying all of his subsequent rehabilitative efforts and keeping him in jail for life.

¶ 40     The defendant also argues that in resentencing him to 71-years imprisonment, the circuit court misapprehended the law by believing that it could not impose a sentence below the statutory minimum. In the alternative, the defendant asserts that his trial counsel was ineffective for not alerting the circuit court as to this mistake and for failing to cite the relevant case law and

scientific studies concerning the proportionate penalties clause, which would have permitted the circuit court to impose a lower sentence.

¶ 41    Because we find it to be dispositive, we begin by addressing the defendant's claim regarding his trial counsel's ineffective representation at the sentencing hearing.

¶ 42    Both the United States and the Illinois constitution guarantee criminal defendants the right to effective representation of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15 (citing U.S. Const. amends, VI, XIV, and Ill. Const. 1970, art. I, § 8); see also *People v. Domagala*, 2012 IL 113688, ¶ 11. Claims of ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). Under this test, to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both: (1) that counsel's representation was deficient, *i.e.,* that it fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, *i.e.*, that but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. *Domagala*, 2012 IL 113688, ¶ 11 (citing *Strickland* 466 U.S. at 687-88, 694). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Generally, to establish prejudice in sentencing, the defendant must show a reasonable probability that the circuit court would have imposed a lesser sentence if his counsel had not erred. See *People v. Steidl*, 177 Ill. 2d 239, 257 (1997).

¶ 43    For the following reasons, we find that the defendant has demonstrated both counsel's deficient performance and prejudice stemming from it.

¶ 44    At the resentencing hearing, defense counsel relied on the Illinois proportionate penalties

clause (Ill. Const. 1970, art. I, § 11) to argue that the court should impose a sentence below the statutory minimum because the defendant was only 23 years old at the time of the offense and had since shown significant rehabilitative potential. To reduce the defendant's sentence on the basis of the proportionate penalties clause counsel was required to show that, as applied to the defendant, the 71-year sentence was "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002); see also *People v. Klepper*, 234 Ill. 2d 337, 348 (2009). Our supreme court has never defined what constitutes a cruel or degrading sentence that is " 'wholly disproportioned to the offense' " because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of our community." *Id.* at 339. To determine whether a sentence shocks the moral sense of our community, a court considers the objective facts of the case in light of "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 45    In sentencing young adult offenders, our community's standard of moral decency is derived from the now well-established legal developments governing the sentencing of juveniles that began with the seminal decision in *Miller,* 567 U.S. 460. There, the United States Supreme Court held that the imposition of a mandatory life sentence without parole for juveniles under the age of 18 violated the eighth amendment's prohibition against cruel and unusual punishments. *Miller*, 567 U.S. at 465. The Supreme Court held that minors are constitutionally different from adults for sentencing purposes, being less mature and responsible, more impulsive, and more vulnerable to negative influences and peer pressure than adults, and not having the fully-formed character of adults so that their actions do not necessarily indicate irreversible depravity. *Id.* at 471-74.

¶ 46    Adopting the rationale in *Miller*, the Illinois supreme court has since held that a mandatory

natural or *de facto* life sentence, which is defined as a sentence that is greater than 40 years, imposed on a juvenile, is unconstitutional under the eighth amendment where the court fails to consider youth and its attendant characteristics in imposing the sentence. *People v. Wilson*, 2023 IL 127666, ¶¶ 26-42; *People v. Reyes*, 2016 IL 119271, ¶ 9; *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41. However, "[b]y now, it is clear that the categorical findings made by *Miller* and its progeny under the federal eighth amendment apply only to juvenile[] offenders," *i.e.*, those under the age of 18. *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 28.

¶ 47    Nonetheless, while the holding in *Miller* strictly applies only to juveniles, the Illinois supreme court has made clear that young adults may rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support as-applied challenges to mandatory natural or *de facto* life sentences brought under the Illinois proportionate penalties clause. See *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25 (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44); *People v. Harris*, 2018 IL 121932, ¶ 48; *c.f.*, *People v. Hilliard*, 2023 IL 128186, ¶ 27.

¶ 48    It is undisputed here that the defendant's 71-year sentence is a mandatory *de facto* life sentence. The sentence consists of the minimum 20-year sentence for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2008) (providing a range of 20 to 60 years' imprisonment)) plus a minimum 25-year mandatory firearm enhancement (see 730 ILCS 5/5-8(1)(a)(1)(d)(iii) (West 2022) (providing for an add-on of 25 years to natural life)) and the minimum 6 years sentence for attempted first degree murder (see 730 ILCS 5/5-4.5-24(a) (West 2022) (providing a range of 6 to 30 years' imprisonment) plus a mandatory 20-year firearm enhancement (see 730 ILCS 5/5-8-1(a)(1)(d) (ii) (West 2008)). What is more, the sentences must be served consecutively (730 ILCS 5/5-8-4(d)(1) (West 2022)). Accordingly, the minimum aggregate sentence is 71-years, of which, because of truth in sentencing, the defendant must serve a minimum of 67 years, and 1.5 months.

As a result, and according to the IDOC website, of which we may take judicial notice (see *People v. Sanchez*, 404 Ill. App. 3d 15, 17 (2010) (finding that this court can take judicial notice of the IDOC website)), the defendant's earliest projected parole date is 9/6/2072, at which point he will be 89 years old.

¶ 49    To succeed on an as-applied proportionate penalties' challenge to this *de facto* life sentence, however, the defendant was required to "demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was 'cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community.' " *Daniels*, 2020 IL App (1st) 171738, ¶ 25 (quoting *Klepper*, 234 Ill. 2d at 348). Because "[a]ll as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge," it is "paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotations omitted.) *Harris*, 2018 IL 121932, ¶ 39 (citing *People v. Hartrich*, 2018 IL 121636, ¶ 31); see also *House*, 2021 IL 125124 (reversing and remanding for further proceedings because the record regarding the young adult defendant's immaturity was not fully developed). " 'A defendant who has an adequate opportunity to present evidence in support of an as-applied, constitutional claim will have his claim adjudged on the record he presents.' " *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 39 (quoting *People v. Coty*, 2020 IL 123972, ¶ 22).

¶ 50    In the present case, defense counsel failed to present any evidence whatsoever regarding the defendant's developmental maturity at the time of the offense. At the resentencing hearing, defense counsel called only two witnesses, the defendant's sister, Virginia, and his mother, Miriam, neither of whom presented any evidence that, at the time of the offense, the defendant's

brain was so immature that he should be treated as a juvenile. In addition to these two witnesses, at the resentencing hearing, defense counsel only offered the defendant's "grades from his paralegal course," and the numerous certificates for the classes he had successfully completed while incarcerated. Again, none of this evidence had any bearing on the immaturity of the defendant's brain at the time of the offense.

¶ 51    Even more glaringly, once appointed, defense counsel failed to request that the court order the creation of a new PSI, which could have elicited evidence from the defendant's youth regarding his developmental state and maturity at the time of the offense. Instead, counsel rested on a PSI, which had been ordered and prepared prior to his appointment, and which contained no information whatsoever about the defendant. What is more, defense counsel failed to argue any facts from the nearly 15-year-old and factually limited original PSI (such as that the defendant joined the gang because all of his friends were joining, or that he was traumatized by his father's abuse of his mother), which would have supported the argument that the defendant was so immature at the time of the offense that he was more akin to a juvenile than to an adult.

¶ 52    More overridingly, while counsel's sentencing memorandum relied on the proportionate penalties clause in support of a reduced sentence, counsel failed to cite any cases regarding "the evolving science on juvenile maturity and brain development," except for *House*, 2019 IL App (1st) 110580-B, *reversed in part, vacated in part by* 2021 IL 125124. By then, however, *House* had been vacated and remanded for further postconviction proceedings because the record in that case was insufficiently developed and no factual findings were made to show how the science concerning juvenile maturity and brain development applied to that defendant. *Id.*

¶ 53    Since we presume that a competent attorney would have been aware of both the vacatur and rationale of *House*, we are even more flummoxed by counsel's failure to introduce any

17

evidence whatsoever at the defendant's resentencing hearing about his developmental maturity at the time of the offense. We are also confounded by counsel's failure to cite any additional non-vacated case-law or scientific authority to support his position that youthful adult offenders are more akin to juveniles than previously believed and that the defendant's sentence in this case should be vacated pursuant to the Illinois proportionate penalties clause. See *e.g.*, *Daniels*, 2020 IL App (1st) 171738, ¶ 25; *Thompson*, 2015 IL 118151, ¶¶ 43-44; *Harris*, 2018 IL 121932, ¶ 48; *Hilliard*, 2023 IL 128186, ¶ 27.

¶ 54    Under this record, we are compelled to conclude that counsel's performance was objectively unreasonable and therefore deficient.

¶ 55    We further find that counsel's deficient performance prejudiced the defendant. In this respect, the record reveals that in rejecting defense counsel's request for a sentence below the statutory minimum, the circuit court noted the defendant's substantial rehabilitative efforts but nonetheless found that based on the evidence presented by defense counsel, it had to "follow the law" and impose the statutory minimum sentence. As the court explained:

> "[T]he only evidence that was presented for me to be able to look at that and see whether or not this would be an unconstitutional sentence as applied to [the defendant] is basically that the brains is still immature. However, when I look at all the evidence, the Presentence Investigation and everything [the defendant] has done, there's nothing for me to base a finding to go under the minimum in this case."

The court further stated that "unless I see evidence to ignore the enhancements and to ignore the law, which I don't find, which is looking at all the evidence presented, simply arguing that your brain was not developed at 23 and that I should therefore ignore the enhancements, I don't find is

sufficient or proper for me to do."

¶ 56     As is apparent from the court's ruling, the defendant's sentence was dictated by defense counsel's inexplicable failure to provide any factual or legal evidence regarding the defendant's immaturity so as to support a claim that under the proportionate penalties clause the evolving science on juvenile maturity and brain development applied to the defendant's case. See *Daniels*, 2020 IL App (1st) 171738, ¶ 25; *Thompson*, 2015 IL 118151, ¶¶ 43-44. Taking into account the circuit court's explicit recognition of the defendant's substantial rehabilitative efforts while incarcerated, and her statement that she was limited by the nearly non-existent evidence offered by defense counsel in imposing the statutory minimum sentence, there is a reasonable probability that but for counsel's deficient performance, the court would have imposed a lesser sentence. We therefore conclude that the defendant was prejudiced by counsel's deficient performance and that the matter must be reversed and remanded to the circuit court for a new sentencing hearing.

¶ 57     In coming to this conclusion, we reject the State's argument that regardless of counsel's performance, the defendant cannot establish prejudice because the court would never have imposed a sentence under the statutory minimum.  In this respect, the State argues that because the defendant was over 21 years old at the time of the offense, any *Miller*-based proportionate penalties argument was legally foreclosed under Illinois law. We disagree.

¶ 58     Our supreme court has repeatedly held that there is no age-limit to raising an as-applied proportionate penalties challenge to a sentence. See *Hilliard*, 2023 IL 128186, ¶ 29 ("The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles."); see also *People v. Sawczenko-Dub*, 345 Ill. App. 3d 522, 532-33 (2003) (addressing, on its merits, an adult defendant's "conten[tion] that the sentencing scheme for first degree murder by personally discharging a firearm violate[d] the proportionate penalties clause as applied to her."); *People v.*

19

*Center*, 198 Ill. App. 3d 1025, 1034 (1990) (reducing the sentence of a 23-year-old offender under the proportionate penalties clause). Thus, while several of our appellate court decisions have held that 21 is the age of demarcation for as-applied proportionate penalties challenges (see *People v. Green*, 2022 IL App (1st) 200749, ¶¶ 37-40), our supreme court has explicitly refused to hold that young adults over 21 are precluded from raising *Miller*-based challenges to their mandatory life sentences under the proportionate penalties clause. See *People v. Clark*, 2023 IL 127273, ¶ 88 ("We need not resolve the issue of whether defendant's age at the time of the offense, 24, would preclude him from raising a *Miller*-based challenge to his sentence under proportionate penalties clause standards in an initial postconviction petition.").

¶ 59     This is so because "as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge." *Harris*, 2018 IL 121932, ¶ 39. Accordingly, while "the legislature has the power to prescribe" mandatory minimum sentences, for adults, the penalty nonetheless "must satisfy constitutional requirements," (*Hilliard*, 2023 IL 128186, ¶ 21 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004)) and be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A defendant bringing an as-applied challenge to a mandatory sentencing statute must ultimately overcome the presumption that the statute is constitutional by clearly establishing that it is invalid as applied to him." *Hilliard*, 2023 IL 128186, ¶ 21; see also *Harris*, 2018 IL 121932, ¶ 38; *House*, 2021 IL 125124, ¶ 18.

¶ 60     Therefore, until our supreme court rules otherwise, contrary to the State's position, we find that the circuit court had (and continues to have) the authority to determine whether under the specific circumstances of this case and taking into account all the evidence presented, the mandatory minimum sentence of 71 years satisfied the constitutional requirements of the

proportionate penalties clause, as applied to the 23-year-old defendant.

¶ 61     Accordingly, because we reject the State's contention that regardless of trial counsel's performance, there were no circumstances under which, in the instant case, the circuit court could have found a proportionate penalties violation, we vacate the defendant's sentence and remand for a new sentencing hearing.

¶ 62     In doing so, we instruct the circuit court to order a new PSI prior to the resentencing hearing. In addition, we instruct defense counsel, if at all possible, to provide the circuit court with both factual and legal evidence that will support an as-applied proportionate penalties challenge to the defendant's mandatory *de facto* life sentence.

¶ 63     Reversed and remanded with instructions.

¶ 64     JUSTICE PUCINSKI, specially concurring:

¶ 65     While it is correct that the current legislative landscape precludes defendant from ever seeking parole, the fact that many emerging adult defendants never have a chance to demonstrate rehabilitation is inconsistent with the fundamental co-principle of our Illinois justice system: to punish AND to rehabilitate. This court cannot make that change, but the legislature, in considering other emerging adult issues, could consider creating more robust rehabilitation and parole opportunities.

¶ 66     JUSTICE COGHLAN, dissenting:

¶ 67     Our supreme court has declared that "a defendant who has had an adequate opportunity to present evidence in support of an as-applied, constitutional claim will have his claim adjudged on the record he presents." *People v. Coty*, 2020 IL 123972, ¶ 22. The majority recognizes that " 'as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge.' " *Supra* ¶ 49 (quoting *People v. Harris*, 2018

IL 121932, ¶ 39). Nevertheless, because "*defense counsel* failed to present any evidence whatsoever regarding the defendant's developmental maturity at the time of the offense," the majority concludes "that counsel's deficient performance prejudiced the defendant." (Emphasis added.) *Supra* ¶¶ 50, 55. According to the majority, if defense counsel had presented some unspecified information regarding defendant's maturity and brain development, there is a *reasonable probability* that the trial court would have done what no other Illinois court has done before: find that the sentence violated the Illinois proportionate penalties clause as applied to the 23-year-old defendant based on *Miller v. Alabama*, 567 U.S. 460 (2012). *Supra* ¶ 56. I respectfully disagree with the majority's decision.

¶ 68    No evidence was presented at defendant's December 12, 2022, resentencing hearing showing how the "evolving science on juvenile maturity and brain development" and other *Miller* factors specifically applied to him. *People v. Harris*, 2018 IL 121932, ¶ 39. The record on appeal does not contain "sufficient facts to explain why the science relied upon in *Miller* would apply to defendant's circumstances." *People v. Thompson*, 2015 IL 118151, ¶ 38. Defendant did not raise a proportionate penalties claim on direct appeal, in his 2013 original post-conviction petition, or in either of the successive post-conviction petitions he filed in 2019 and 2022. See *People v. Estrada*, 2012 IL App (1st) 100265-U; *People v. Estrada*, 2016 IL App (1st) 141806-U; *People v. Estrada*, 2022 IL App (1st) 211417-U. The defendant also filed a federal court action in 2012 in which he challenged the constitutionality of his sentence but did not raise a proportionate penalties claim in that action either. See *Estrada v. Lashbrook*, No. 16 C 10379, 2017 WL 4804983 (N.D. Ill. October 25, 2017). Despite multiple opportunities, defendant has never alleged any facts showing how the science relied upon in *Miller* applies to his circumstances. *Thompson*, 2015 IL 118151, ¶ 38.

¶ 69    *Miller* was a 2012 decision, and already on the books when defendant filed his initial post-conviction petition in 2013 and his successive post-conviction petitions in 2019 and 2022. See *Estrada*, 2022 IL App (1st) 211417-U, ¶¶ 36-37. As our supreme court explained, "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause. *** Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *People v. Dorsey*, 2021 IL 123010, ¶ 74. Following *Dorsey*, Illinois reviewing courts have repeatedly concluded that *Miller* and its progeny do not provide petitioners with the requisite cause for challenging their sentences on proportionate penalties. See *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 20 (collecting cases). *Miller* did not provide the legal basis for a proportionate penalties claim, but merely added "some helpful support" for it. *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 70    The majority speculates that there is a "reasonable probability" that the trial court would have imposed a sentence below the statutory minimum if defense counsel had cited "relevant case law." *Supra* ¶¶ 40, 56. I disagree. No Illinois court has ever reduced the sentence of a 23-year-old based on the proportionate penalties clause. See, *e.g.*, *People v. Everett*, 2022 IL 201169 (51-year aggregate sentence did not violate the proportionate penalties clause as applied to 23-year-old defendant). This court has rejected similar claims made by even younger defendants for failing to provide a sufficient record supporting their argument. See, *e.g.*, *People v. Guerrero*, 2022 IL App (1st) 210400 (22-year-old defendant failed to provide sufficient facts to support his claim that his 45-year sentence violated the proportionate clause); *People v. Buford*, 2023 IL App (1st) 201176 (22-year-old defendant failed to establish an arguable claim that his 80-year sentence violated the proportionate penalties clause); see also *People v. Green*, 2022 IL App

23

(1st) 200749, ¶¶ 37-40 (collecting Illinois cases that have rejected defendants' proportionate penalties claims in light of being over 21 years old).

¶ 71     Nothing in the record before us establishes that "absent trial counsel's alleged deficiencies, the sentencer *would have found* that the mitigating circumstances preclude" the sentence imposed. (Emphasis added.) *People v. Griffin*, 178 Ill. 2d 65, 87 (1997). There is no evidence that defendant's immaturity, impetuosity, inability to appreciate risks and consequences, or anything else caused him to act more like a juvenile than an adult when he shot two people, killing one. "If mitigation evidence exists, defense counsel has the duty to introduce it in support of the defendant." *Id.* at 86. But "it is equally settled that the failure to offer mitigation evidence *** is not itself sufficient to show that defense counsel was ineffective." *Id.* Where, as in the instant case, "there [i]s no proof that such evidence actually exist[s] or that it would have been helpful to the defense" (*People v. Dupree*, 2018 IL 122307, ¶ 40), defendant cannot overcome "the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 72     As the trial judge correctly concluded at the resentencing hearing:

> "[T]he only evidence that was presented for me to be able to look at that and see whether or not this would be an unconstitutional sentence as applied to Mr. Estrada is basically that the brain is still immature. However, when I look at all the evidence, the Presentence Investigation and everything Mr. Estrada has done, there's nothing for me to base a finding to go under the minimum in this case."

¶ 73     The trial court properly rejected defendant's proportionate penalties argument because it was not supported by the evidence. On review, this court should do the same. In my view, the record does not justify the majority's conclusion that defense counsel's performance was

ineffective or that, absent counsel's deficient performance, there is a reasonable probability that the trial judge would have imposed a sentence "under the minimum in this case." Defendant bears "the burden of alleging facts showing that his particular circumstances fall under *Miller* and that a sentence imposed on an adult pursuant to relevant Illinois statutes is nonetheless so disproportionate to the offense that it shocks the moral sense of the community." *People v. Thomas*, 2022 IL App (1st) 200164, ¶ 52. Defendant has failed to meet his burden in this case.

¶ 74     For the reasons stated herein I would affirm defendant's 71-year sentence.